57 P.3d 807

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Thomas BUTERBAUGH, Defendant–Appellant.**

No. 26917.

Court of Appeals of Idaho.

June 14, 2002.

Rehearing Denied Aug. 6, 2002.

Nevin, Herzfeld, Benjamin McKay, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Alan G. Lance, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

LANSING, Judge.

While responding to a fire in Thomas Buterbaugh's home, firefighters discovered in the basement evidence of past indoor plant cultivation. Because firefighters believed that this evidence might be indicative of a marijuana-growing operation, they summoned the police. The fire chief later found signs of another growing operation in a bedroom closet, which was disclosed to police. A police officer went into Buterbaugh's house, seized the evidence, and then obtained a warrant authorizing a broader search. In executing the warrant, the police found marijuana, other drugs, and paraphernalia. Buterbaugh was charged with manufacturing marijuana and subsequently moved to suppress all the evidence found in his home on the ground that the officer's warrantless en-

try and seizure of evidence was unlawful and invalidated the warrant. The district court denied the motion.

We conclude that the warrantless search of the basement was justified by exigent circumstances. We also hold that, although the warrantless search of the upstairs bedroom was unlawful, this illegality did not invalidate the warrant, and the evidence found in the bedroom inevitably would have been discovered during the execution of the warrant. Therefore, we affirm the district court's order denying Buterbaugh's suppression motion.

## I.

### BACKGROUND

Firemen summoned to fight a fire in Buterbaugh's home determined that it had originated in the basement. When they entered the basement to insure that the fire was out and to further investigate its origin, they discovered a hot spot (a place with smoldering embers). A number of electrical extension cords stretched from the hot spot to a large wooden box. Battalion Chief Bobby Goff opened the box and discovered that it was lined with aluminum foil and contained fluorescent lamps and empty planting pots. Believing that the box was "a police matter," Goff left the contents undisturbed and reported his discovery to the Fire Chief, Vernon Fisher. Fisher looked in the box and then requested police assistance. Sergeant Curly Baker of the Weiser Police Department responded and briefly entered the basement to view the box. Because there was still heavy smoke in the basement, Baker left without removing any evidence and asked to be called when the smoke had cleared.

After the fire had been completely extinguished, Fire Chief Fisher conducted a routine walk-through of the home and found similar evidence of a past plant-growing operation in a bedroom closet. There was no fire in this part of the home, and Fisher's walk-through was not done as part of any investigation into the origins of the fire. This second discovery was reported to Sergeant Baker when he returned to the Buterbaugh residence.

With the help of firefighters, Sergeant Baker dismantled the box in the basement and removed it and its contents. Some marijuana was found in the bottom of the box while it was being dismantled. He also seized the evidence in the upstairs closet. Some marijuana was also found on the closet floor. Baker then applied for a search warrant. In support of the application, he gave an oral affidavit detailing the evidence that had been discovered up to that point. A search warrant was issued, and the subsequent search of the home pursuant to the warrant uncovered additional marijuana and other drugs, marijuana seeds, and drug paraphernalia.

After being charged with manufacturing marijuana, Idaho Code § 37-2732(a), Buterbaugh filed a motion to suppress all the evidence found in his home on the basis that the officer's initial warrantless entries were unlawful and, because those entries yielded the evidence that served as the basis for issuance of the warrant, the warrant also was invalid. The district court denied the suppression motion. Thereafter, Buterbaugh and the prosecution arrived at a plea agreement by which Buterbaugh agreed to enter a conditional guilty plea to the reduced charge of possession of three ounces or more of marijuana, I.C. § 37-2732(e), while reserving his right to appeal from the denial of his suppression motion. On appeal, he contends that Sergeant Baker's warrantless entry and seizure of evidence violated the federal and state Constitutions.

## II.

### ANALYSIS

#### A. Exigent Circumstances and the Plain View Doctrine

 The guarantees against unreasonable searches found in the Fourth Amendment of the United States Constitution and Article I, § 17 of the Idaho Constitution prohibit unreasonable, warrantless intrusions into a home by government agents. *State v. Curl*, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993). Evidence acquired by law enforcement in violation of these constitutional protections must be suppressed in a criminal

prosecution of the persons whose rights were violated. *Id.* at 227, 869 P.2d at 227; *State v. Johnson,* 110 Idaho 516, 525, 716 P.2d 1288, 1297 (1986); *State v. Conner,* 59 Idaho 695, 703, 89 P.2d 197, 201 (1939). When a warrantless search occurs, the State bears the burden to show a justification for dispensing with the warrant requirement. *Welsh v. Wisconsin,* 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732, 742–43 (1984); *Curl,* 125 Idaho at 225, 869 P.2d at 225; *State v. Sailas,* 129 Idaho 432, 434, 925 P.2d 1131, 1133 (Ct.App.1996). One recognized exception is exigent circumstances. This exception applies where there is "a compelling need for official action and no time to secure a warrant." *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498 (1978); *Sailas,* 129 Idaho at 435, 925 P.2d at 1134. However, a warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." *Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978) (quoting *Terry v. Ohio,* 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908 (1968)).

 If officers are lawfully on premises, whether in response to an exigency or under some other warrant exception, and see contraband or other evidence of criminal activity in plain view, they may seize the evidence without first obtaining a warrant. *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2305, 110 L.Ed.2d 112, 120 (1990); *State v. Claiborne,* 120 Idaho 581, 586, 818 P.2d 285, 290 (1991); *State v. Hagedorn,* 129 Idaho 155, 158, 922 P.2d 1081, 1084 (Ct.App.1996). For the plain view doctrine to apply two conditions must be met: 1) there must be a lawful intrusion or the officer must otherwise properly be in position to view a particular area, and 2) it must be immediately apparent that items viewed are contraband or evidence of a crime. *Horton,* 496 U.S. at 135–36, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112, 121–22,; *State v. Buti,* 131 Idaho 793, 799, 964 P.2d 660, 666 (1998); *Hagedorn,* 129 Idaho at 159, 922 P.2d at 1085. The second element of the plain view doctrine is met if the officer has probable cause to believe the item seized is contraband or evidence of crime. *Soldal v. Cook County, Ill.,* 506 U.S. 56, 66, 113 S.Ct. 538, 546, 121 L.Ed.2d 450, 461 (1992); *Texas v. Brown,* 460 U.S. 730, 741–42, 103 S.Ct.

1535, 1543, 75 L.Ed.2d 502, 513 (1983); *Claiborne,* 120 Idaho at 586, 818 P.2d at 290. This probable cause determination may be based on the surrounding facts and circumstances, and an officer "may draw reasonable inferences based on his training and experience in determining whether a connection exists." *Id.* (quoting *State v. Tamez,* 116 Idaho 945, 946, 782 P.2d 353, 354 (Ct.App. 1989)).

Buterbaugh acknowledges that the fire in his home constituted an exigency that justified the firemen's entry, *see Tyler,* 436 U.S. at 509, 98 S.Ct. at 1950, 56 L.Ed.2d at 498 but he contends that the warrantless searches and seizure of evidence were nonetheless illegal for three reasons. First, he asserts that the firemen exceeded the scope of the intrusion justified by the exigency when they looked inside the box in the basement and inside the bedroom closet. Second, he contends that even if the firefighters did not exceed the scope of the exigency, Sergeant Baker was not lawfully present because he was not responding to the need to extinguish the fire but was investigating the firemen's report of a possible crime. Third, Buterbaugh asserts that even if the firefighters lawfully examined the contents of the box and closet, the plain view doctrine does not apply because what they saw—equipment for growing plants indoors—was neither contraband nor obvious evidence of a crime.

Buterbaugh's second argument—that Sergeant Baker's entry of Buterbaugh's residence was illegal because the officer was not there for purposes of responding to the fire—has been recently resolved by this Court in *State v. Bower,* 135 Idaho 554, 21 P.3d 491 (Ct.App.2001), a decision that was issued after the resolution of Buterbaugh's suppression motion. In *Bower,* we held that a police officer "may follow in the footsteps of firefighters or other emergency response personnel who, while lawfully present in response to an exigent circumstance, have discovered contraband or other evidence of criminal activity in plain view, and have thereupon requested police assistance." *Id.* at 560, 21 P.3d at 497. We reasoned as follows:

In such a circumstance, the defendant's privacy interest has already been compromised to the extent of the emergency personnel's intrusion. So long as the emergency personnel are still lawfully on the premises at the time of the police officer's arrival, and the officer's intrusion does not exceed that of the emergency personnel, either temporally or spatially, the defendant suffers no additional injury to his privacy interest by the officer's entry for purposes of seizing the already-discovered contraband.

*Id.*

Thus, after our decision in *Bower*, Buterbaugh retains two viable arguments: that the firefighters' own intrusions when they looked into the box in the basement and into the bedroom closet were unlawful because these intrusions were unnecessary in order to fight the fire or investigate its cause; and, second, that even if the firefighters were lawfully in a position to see the contents of the box and closet, what they saw did not fall within the plain view doctrine because it was not immediately apparent that the items viewed were contraband or evidence of a crime.

### 1. Search of the basement

■ Buterbaugh asserts that it was unnecessary and unreasonable for firefighters to open and look into the box in the basement. However, the district court's contrary finding is supported by the evidence. Goff testified that he was investigating the basement because it appeared that the fire had burned through the kitchen floor from below. In the basement he found a hot spot. He said that there were extension cords running from this hot spot to a large box in the basement. Suspecting that the fire may have been caused by an electrical problem, Goff looked briefly into the box. The district court found that Goff's examination of the basement grow box was legitimately a part of his investigation of the origin of the fire. Buterbaugh has shown no error in this finding.

Buterbaugh also argues that even if the firefighters acted lawfully in looking into the box, the plain view doctrine is inapplicable because they did not at that time see any marijuana and the box could have been used for the innocent growing of lawful plants. We disagree. Goff and Fisher testified that

they saw aluminum foil lining the sides of the box, fluorescent lamps, and empty planting pots. These were completely concealed in a box with a door that was difficult to open. Although it is not illegal to possess the observed items, the fact that they had been used in such a secretive manner—located in a basement and concealed in a tightly closed box—creates a probability that something more sanctionable than the cultivation of tomatoes had transpired. The totality of the circumstances produced probable cause to believe that the box and its contents were evidence of criminal activity. Therefore, the items in the box were properly seized pursuant to the plain view doctrine.

### 2. Search of the bedroom closet

The fire did not spread to the upstairs bedrooms of Buterbaugh's house. Fire Chief Fisher testified that his examination of those rooms was unrelated to any effort to extinguish the fire, to determine its origin, or to ventilate the rooms. Rather, he said that his purpose was to conduct an inventory to determine "what's in the house, if there is any kind of valuable stuff in there."

■ The State relies on the provisions of the Weiser City Code to justify this aspect of Chief Fisher's actions. Specifically, the State relies on the Fire Chief's authority to investigate the cause, origin, and circumstances of every fire involving injury to property and his duty to insure that fires are fully extinguished before leaving the scene of a fire. *See* Weiser City Code §§ 4–2–1(C) (adopting Uniform Fire Code) and 5–1–3 (stating duties of Fire Chief). *See also* Uniform Fire Code §§ 104.1.1 (giving Fire Chief control of scene of fire) and 104.2 (giving Fire Chief authority to investigate the cause, origin, and circumstances of fires involving loss of or damage to property or injury to persons). The State's argument fails because the Fire Chief's testimony does not indicate that his examination of the upstairs bedrooms was conducted for such purposes. We conclude that Fisher's search of the upstairs bedroom was not justified by exigent circumstances. Therefore, it was an illegal warrantless search. Because the Fire Chief's entry was not lawful, Sergeant Bak-

er's repetition of the intrusion was also impermissible.

## B. Validity of the Warrant

Our conclusion that police unlawfully acquired the evidence from Buterbaugh's bedroom before issuance of the warrant requires that we consider whether the warrant, which was issued in part on the basis of that evidence, was valid. When a search warrant has been based in part on unlawfully obtained evidence, the warrant is invalid unless the remaining evidence that was presented to the magistrate contains adequate facts to show probable cause for the search. *State v. Revenaugh*, 133 Idaho 774, 779, 992 P.2d 769, 774 (1999); *Doe v. State*, 131 Idaho 851, 853, 965 P.2d 816, 818 (1998); *State v. Cada*, 129 Idaho 224, 228, 923 P.2d 469, 473 (Ct.App.1996). Here, Sergeant Baker's oral affidavit offered in support of the warrant application referred to both the evidence found in Buterbaugh's bedroom and that found in his basement. The evidence from the box in the basement, standing alone, was sufficient to create probable cause to believe that someone had been growing marijuana in the house. Therefore, the warrant was not invalid merely because other evidence presented to the issuing magistrate was unlawfully acquired.

## C. Inevitable Discovery

When the warrant was executed, much of the evidence from Buterbaugh's upstairs bedroom had already been unlawfully seen and removed. We are thus required to address one final question: whether that evidence may be used against Buterbaugh, despite its illegal seizure, through application of the inevitable discovery rule. The inevitable discovery doctrine was embraced by the United States Supreme Court in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), and applied by the Idaho Supreme Court in *Stuart v. State*, 136 Idaho 490, 497–98, 36 P.3d 1278, 1285–86 (2001). In *Nix*, an unconstitutional police interrogation led to the discovery of a murder victim's body. The Supreme Court held that evidence concerning the body and its location was nevertheless admissible because an independent search that was already underway inevitably would have led to the discovery of the body. The exclusionary rule should not be applied, the Court said, because its application would put the prosecution in a worse position than it would have occupied without the constitutional violation. *Id.* at 442–43, 104 S.Ct. at 2508–2509, 81 L.Ed.2d at 386–87. In *Stuart*, the Idaho Supreme Court held that witnesses whose names and locations were discovered by law enforcement through unlawful interception of confidential attorney-client telephone conversations would inevitably have been discovered by means unrelated to the monitored telephone calls. *Stuart*, 136 Idaho at 498, 36 P.3d at 1286.

In the present case, we are thus faced with the question of whether the evidence seized from Buterbaugh's bedroom closet is exempted from the exclusionary rule because it inevitably would have been discovered during the subsequent execution of the search warrant. The Second Circuit Court of Appeals dealt with a similar inevitable discovery issue in *United States v. Whitehorn*, 829 F.2d 1225 (2nd Cir.1987). In that case, federal agents had probable cause to believe that an apartment was being used as a safe house for members of a violent terrorist organization, including wanted felony suspects. Before obtaining a warrant, officers entered the apartment and made a protective "bomb sweep." During this search, they discovered numerous firearms and materials for making false identifications. The officers conveyed their findings to other officers who were in the process of preparing a warrant application. The warrant was issued, and the evidence seen during the "bomb sweep" and other similar evidence was seized. The "bomb sweep" was held to be illegal, but the Second Circuit held that the warrant was valid despite the inclusion of illegally obtained evidence because probable cause was still shown even after all tainted evidence was excised. The court refused to suppress the evidence uncovered during the bomb sweep because it inevitably would have been discovered pursuant to the warrant. The court pointed out that agents were already in the process of securing a warrant when the illegal search was initiated.

Whether it is essential that the line of investigation that would have led to a legal

discovery of the evidence had begun before the illegal search is a matter of disagreement in the federal courts. *Compare United States v. Larsen,* 127 F.3d 984, 987 (10th Cir.1997) (holding that a preexisting investigation is not necessary because an alternate line of investigation may be independent without beginning prior to the violation); *United States v. Silvestri,* 787 F.2d 736, 746 (1st Cir.1986) (rejecting the preexisting investigation requirement as too rigid); and *United States v. Ramirez–Sandoval,* 872 F.2d 1392, 1399 (9th Cir.1989) (stating that a previously initiated investigation is not required), *with United States v. Conner,* 127 F.3d 663, 667 (8th Cir.1997) (requiring government to prove that it was actively pursuing alternate line of investigation at the time of the constitutional violation), *United States v. Cherry,* 759 F.2d 1196, 1204 (5th Cir.1985) (reasoning that the requirement was a necessary deterrent to illegal police actions), and *United States v. Satterfield,* 743 F.2d 827, 846 (11th Cir.1984) (requiring prior initiation of legal means of discovery in order to protect the integrity of the warrant requirement). We conclude that resolution of this issue is unnecessary for disposition of the present case, for although the effort to obtain a search warrant was not made until after the search of Buterbaugh's bedroom, the "line of investigation" that led to issuance of the warrant began with the legal search of the basement, which preceded the bedroom search. Therefore, if a preexisting line of investigation is essential for application of the inevitable discovery doctrine announced in *Nix,* that requirement is satisfied here.

In *Nix,* the line of investigation that would inevitably have led to the discovery of the victim's body was entirely independent of the illegal interrogation that in fact led police to the body. Whether such independence of the alternate line of investigation is essential has also engendered disagreement among the federal courts. *Compare United States v. Thomas,* 955 F.2d 207, 210–11 (4th Cir. 1992) (rejecting the requirement that there be an independent line of investigation for the exception to apply), and *Ramirez Sandoval,* 872 F.2d at 1399 (stating that an independent investigation is not a requirement), *with United States v. Owens,* 782 F.2d 146, 152–53 (10th Cir.1986) (requiring an "independent, untainted investigation").

The Supreme Court's decision in *Nix* did not turn upon the fact that the search which would have led to discovery of the victim's body was completely independent of the unconstitutional interrogation. The Court reasoned that society's interests in deterring illegal police conduct and in having juries receive all probative evidence of a crime are best balanced by applying the exclusionary rule to put the government in the *same,* not a *worse,* position than it would have experienced absent the police misconduct. *Nix,* 467 U.S. at 442–44, 104 S.Ct. at 2508–09, 81 L.Ed.2d at 386–87. This balancing of interests is at the heart of the inevitable discovery doctrine. It would not be advanced by a rule disallowing evidence solely because the alternate investigation was not entirely unrelated to the illegal one. Therefore, in our view, the inquiry should concentrate upon the *inevitability* of the discovery rather than the independence of the investigation. *See Whitehorn,* 829 F.2d at 1231 ("So long as it is clear that such evidence would inevitably have been discovered by lawful means, suppression is inappropriate.") Independence is strong evidence of inevitability, but is not always necessary in order to demonstrate the ineluctability of the discovery. We therefore hold that a wholly independent investigation, while certainly relevant to whether discovery was inevitable, is not a prerequisite to application of the inevitable discovery exception.

In Buterbaugh's case, the firefighters and police conducted a lawful warrantless search and seizure that uncovered compelling evidence of marijuana cultivation in Buterbaugh's basement. The discovery of this evidence undoubtedly would have led the police to further investigate Buterbaugh and to obtain a search warrant. It defies logic to suggest that absent the bedroom search, which merely yielded evidence cumulative of that already found in the basement, the police would have abandoned their investigation and foregone a search warrant. We therefore conclude that the evidence in the bedroom closet inevitably would have been lawfully found in the execution of a search

warrant prompted by the discovery made in the basement. Exclusion of the evidence from the bedroom closet would place the State in a worse position than it would have occupied without the constitutional violation. Therefore, applying the rationale of *Nix*, the evidence from the bedroom should not be suppressed.

### D. Article I, Section 17 of the Idaho Constitution

Buterbaugh argues that, even if the searches of his residence were permissible under the United States Constitution, they are prohibited by Article I, § 17 of the Idaho Constitution. He presents no analysis, however, to demonstrate how the "uniqueness of our state, our Constitution, and our long-standing jurisprudence" support an interpretation of our Constitution that would diverge from the interpretation of the Fourth Amendment on the issues presented here. *See State v. Donato,* 135 Idaho 469, 472, 20 P.3d 5, 8 (2001). Because we have been proffered no reason to construe Article I, § 17 differently from the Fourth Amendment with respect to the warrantless search at issue, we decline to do so.

### III.

### CONCLUSION

The firefighters' examination of the box in Buterbaugh's basement and the police officer's follow-up search and seizure of evidence from the basement were lawful. Although the warrantless search of Buterbaugh's bedroom violated constitutional standards, the evidence seized from the bedroom need not be suppressed because it inevitably would have been discovered as a consequence of the investigation, already underway, that was prompted by the prior discovery in the basement. Accordingly, the order of the district court denying Buterbaugh's motion to suppress evidence is affirmed.

Chief Judge PERRY and Judge Pro Tem SCHILLING concur.