· 136 P.3d 379

STATE of Idaho, Plaintiff–Respondent,

v.

Bran L. BUNTING, Defendant–Appellant.

No. 31655.

Court of Appeals of Idaho.

May 17, 2006.

William M. Appleton, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

PERRY, Chief Judge.

Bran L. Bunting appeals from his judgment of conviction for possession of methamphetamine and trafficking in methamphetamine by manufacturing. Bunting specifically challenges the district court's order denying his motion to suppress evidence. Because we conclude that Bunting's motion to suppress should have been granted, we vacate Bunting's judgment of conviction.

## I.

### FACTS AND PROCEDURE

In September 2003, there was an explosion and ensuing fire in Bunting's garage. Bunting and his neighbor, Gerald Blake, put out the fire. Neither Bunting nor Blake phoned for emergency services, but neighbors across the street did so. The police were the first to arrive at the scene. Bunting was outside and one of the officers asked Bunting if there was anyone else inside the house. Bunting responded he did not know. The officer asked if he could check the house and the garage, and Bunting consented. Three officers went into the home. In the garage, one of the officers reported that there was intense heat and acrid fumes, but no flames. The officer saw a scorched table in the garage with several items on or near it, including a butane torch, a burner, a small propane tank, a roll of aluminum foil, a broken glass jar, and an empty pill bottle underneath the table. The officers all exited the home after being satisfied that no one else was in the building.

After leaving the house, one officer questioned Bunting regarding what had happened. Bunting responded that he had been asleep and heard the explosion. When asked, Bunting admitted that the house was his, that Blake had been in the garage cleaning car parts and that it was not uncommon for people to be in his home without his knowledge. Another officer went next door and contacted Blake. Blake had a large, fresh burn wound on his nose. Blake claimed he had been cleaning car parts with kerosene and lit a cigarette, which ignited the kerosene and caused the explosion and fire.

Firefighters arrived and entered the garage. The officer who had questioned Blake then went back into the garage. The officer noticed a closed blue cooler under the scorched table. The officer asked the firefighters if they had checked the cooler. In response, the firefighters dragged the cooler out and the lid, which was broken, came ajar. The officer saw the contents of the cooler, specifically jars, tubing and funnels and suspected these items were used for methamphetamine production. The officers regrouped and contacted a drug task force officer, who arrived at the scene shortly thereafter.

The drug task force officer went into Bunting's garage and discovered further evidence consistent with methamphetamine production. The drug task force officer then sought and received a search warrant for both Bunting's and Blake's homes. The warrant was served the following day and methamphetamine, as well as additional methamphetamine-making supplies, were discovered in and around Bunting's house. The state charged Bunting with possession of methamphetamine, I.C. § 37–2731(c)(1), and trafficking in methamphetamine by manufacturing, I.C. §§ 37–2732B(a)(3), 37–2732B(a)(3), and 18–204.

Bunting moved to suppress the evidence seized from his house, which the district court denied. A jury found Bunting guilty of both charges. The district court sentenced Bunting to concurrent unified terms of seven years, with a minimum period of confinement of two years, for possession of methamphetamine and twelve and one-half years, with a

minimum period of confinement of five years, for trafficking in methamphetamine by manufacturing. Bunting appeals.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

### A. Exigency

Although it did not base its ultimate ruling to deny Bunting's motion to suppress on the issue, the district court determined that there were probably exigent circumstances justifying police reentry into the house after their initial sweep. The district court reasoned that, so long as the police did not go beyond the area of the firefighters' operation, there was enough overlap between the police and firefighters' investigation to allow the police to follow the firefighters back into the house. Bunting argues that the police reentry did not meet all the requirements of the following-in-the-footsteps of emergency personnel exception to the warrant requirement.

Whether a search complies with the Fourth Amendment is a question of law over which this Court exercises free review. *State v. Hawkins,* 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). The Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution prohibit the government from engaging in warrantless searches and seizures. Therefore, a police officer's or other state agent's warrantless entry into a home is presumed to be unlawful unless it falls within a well-recognized exception. *California v. Acevedo,* 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634 (1991); *State v. Holton,* 132 Idaho 501, 503–04, 975 P.2d 789, 791–92 (1999); *State v. Pearson–Anderson,* 136 Idaho 847, 849, 41 P.3d 275, 277 (Ct.App.2001). Under the exigent circumstances exception, agents of the state may engage in warrantless searches when there is compelling need for official action and no time to secure a warrant. *Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486, 498 (1978); *Pearson–Anderson,* 136 Idaho at 849, 41 P.3d at 277. However, a warrantless search under this exception must be strictly circumscribed by the nature of the exigency that justifies the intrusion. *State v. Buterbaugh,* 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct.App.2002). The test for application of this warrant exception is whether the facts as known to the agent at the time of entry, together with reasonable inferences, would warrant a reasonable belief that an exigency justified the intrusion. *State v. Barrett,* 138 Idaho 290, 293, 62 P.3d 214, 217 (Ct.App.2003). The burden is on the state to show the applicability of this exception to the warrant requirement. *State v. Brauch,* 133 Idaho 215, 218–19, 984 P.2d 703, 706–07 (1999).

The traditional exigencies that justify a warrantless entry by law enforcement officers are the pursuit of a fleeing felon, imminent risk of destruction of evidence, preventing a suspect from escaping, or danger to the police or to other persons inside or outside the dwelling. *See Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1689–90, 109 L.Ed.2d 85, 95–96 (1990). A structural fire is also an exigent circumstance where no warrant is required for firefighters to enter a building to fight a fire and stay a reasonable length of time to determine the cause of the fire. *Tyler,* 436 U.S. at 511, 98 S.Ct. at 1950–51, 56 L.Ed.2d at 499–500. Medical emergencies also qualify as exigencies and emergency personal may enter a building without a warrant to perform emergency medicine or rescue. *See State v. Bower,* 135 Idaho 554, 557, 21 P.3d 491, 494 (Ct.App.2001). This Court has previously

held that a police officer may follow emergency personnel into a premises without a search warrant under certain, narrowly-defined circumstances, stating:

> [A]n officer may follow in the footsteps of firefighters or other emergency response personnel who, while lawfully present in response to an exigent circumstance, have discovered contraband or other evidence of criminal activity in plain view, and have thereupon requested police assistance. In such a circumstance, the defendant's privacy interest has already been compromised to the extent of the emergency personnel's intrusion. So long as the emergency personnel are still lawfully on the premises at the time of the police officer's arrival, and the officer's intrusion does not exceed that of the emergency personnel, either temporally or spatially, the defendant suffers no additional injury to his privacy interest by the officer's entry for purposes of seizing the already-discovered contraband.

*Bower,* 135 Idaho at 560, 21 P.3d at 497.

In *Bower,* paramedics entered a motel room to treat a man who had collapsed in the bathroom. One paramedic noticed what appeared to be drug paraphernalia in plain view. The paramedics summoned the police. Upon arrival, the police entered the motel without a warrant to investigate the evidence of a potential crime reported by the paramedics. We determined that the exigency created by the injured defendant in his motel room allowed the paramedics to enter without a warrant. After the paramedics noticed the drug paraphernalia and summoned the police, the police could follow in the footsteps of the emergency personal without a warrant. *Bower,* 135 Idaho at 560, 21 P.3d at 497.

In *Buterbaugh,* a police officer conducted a warrantless search of a basement after the fire chief requested police assistance because he had discovered a marijuana-growing apparatus while investigating the cause of a fire in the house. There, applying the reasoning in *Bower,* we determined the search and seizure of the growing apparatus was lawful because the officer had been summoned by the firefighters and the search of the basement did not exceed the scope of the already existing firefighter's intrusion. *Buterbaugh* 138 Idaho at 102, 57 P.3d at 813.

In the instant case, the fire in the garage, and the potential for it to reignite, was an exigency allowing warrantless entry into the house and garage by firefighters. However, the firefighters at the scene did not find any contraband or evidence of a crime while investigating the fire's cause. The firefighters did not request the assistance of a police officer. Neither *Bower* nor *Buterbaugh* suggest that a police officer may follow firefighters or other emergency personal into a building at-will and then conduct a search for criminal evidence based upon the exigency that allowed the emergency personal to enter the building without a warrant. Only acting upon a request from firefighters who had discovered contraband could make the officer's reentry fall under the exception to the warrant requirement of following emergency personnel as set out in *Bower* and *Buterbaugh.*

Additionally, there was no other exigency justifying the officer's entry. After the reported explosion, the police, with Bunting's consent, swept the house and satisfied themselves that no one else was in the house or garage that could have been in imminent danger. Having established that no one was in the house, the record demonstrates that none of the traditional law enforcement exigencies existed to justify further warrantless entries. Furthermore, during the preliminary hearing the officer who initially entered Bunting's garage testified that he reentered the garage because he was "just checking out what fire was doing to see what kind of—if we had a crime there, what have you." This statement indicates the reentry into the garage was investigative in nature and further demonstrates that there were no facts known to the officer that would create a reasonable belief in an exigency justifying a warrantless reentry into the home.

Therefore, we determine there was no traditional police exigency that would allow the officer to reenter the house and, by his own admission, the officer's second entry was investigative. Furthermore, because the firefighters never found evidence of a crime or requested assistance of the officer, the offi-

cer's reentry is not exempted from the warrant requirement by the follow-in-the-footsteps exception established in *Bower* and *Buterbaugh*.

## B. Validity of Search Warrant

██ On appeal, Bunting asserts the warrant is invalid. Bunting argues that the information presented to the magistrate, based only on the evidence discovered during the initial, lawful entry, is not sufficient to support probable cause for a search warrant. The district court concluded the evidence was sufficient.

██ When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527, 548–49 (1983); *State v. Josephson,* 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang,* 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In this evaluation, great deference is paid to the magistrate's determination. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 546– 47; *State v. Wilson,* 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct.App.1997). The test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed. *State v. Holman,* 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct.App.1985). When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly,* 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct.App.1984).

██ In order for a search warrant to be valid, it must be supported by probable cause to believe that evidence or fruits of a crime may be found in a particular place. *Josephson,* 123 Idaho at 792–93, 852 P.2d at 1389–90. When determining whether probable cause exists:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay infor-

mation, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548; *see also Wilson,* 130 Idaho at 215, 938 P.2d at 1253.

██ When tainted evidence has been relied upon for the issuance of a warrant, an appellate court must determine whether the remaining information presented to the magistrate, after the tainted evidence is excluded, contains adequate facts from which the magistrate could have concluded that probable cause existed for issuance of the search warrant. *Doe v. State,* 131 Idaho 851, 853, 965 P.2d 816, 818 (1998); *Buterbaugh,* 138 Idaho at 101, 57 P.3d at 812.

Bunting does not contest the lawfulness of the initial entry into the garage. Anything the officer witnessed during that initial entry could validly be used in attempting to establish probable cause for a search warrant. Information gleaned from the officer's discussions with both Bunting and Blake, as well as anything observable from outside Bunting's house, could also be used as evidence to establish probable cause.

Having established that all the entries after the initial entry were unlawful, as they were performed in the absence of either a search warrant or exigency, this Court must excise all information presented to the magistrate that originated from those unlawful entries. Only the information before the magistrate that originated from the initial, lawful warrantless entry will be reviewed to determine if it alone would have provided adequate facts from which the magistrate could have concluded that probable cause existed to issue a search warrant for Bunting's house.

Initially, we note that it was only the drug task force officer, who went into the garage during the unlawful third entry, who testified before the magistrate at the probable cause hearing. The officer who made the initial lawful warrantless entry into the garage did not testify before the magistrate. As a result, the drug task force officer testified only to what he personally witnessed during his warrantless search of the garage, as well as

what he recalled the other officers had related to him concerning their observations from both the initial lawful entry and the subsequent unlawful entries.

We note also that, in denying Bunting's motion to suppress, the district court found of particular significance that the officer who made the initial entry testified at the suppression hearing that he did not see any car parts on or near where the fire started. This was despite the fact that both Bunting and Blake had stated that the fire started when Blake was cleaning car parts with kerosene. However, the drug task force officer who testified at the probable cause hearing did not present this observation to the magistrate and it was not part of the basis of the issuance of the warrant. Because of this, it cannot be considered in evaluating whether the facts *before the magistrate* were sufficient to determine if probable cause existed to issue the warrant.

After excising the evidence tainted by the warrantless entries, only a minimum of information presented to the magistrate remains. The relevant facts obtained through either the initial, lawful entry or other lawful sources that were put before the magistrate were: Blake claimed that he was cleaning car parts with kerosene in Bunting's garage and lit a cigarette, resulting in an explosion and fire; Bunting, asleep upstairs, was awaken by the explosion; neighbors heard the explosion and reported it to the authorities; Blake and Bunting put the fire out themselves; the fire department arrived but the fire was already extinguished; Blake had a fresh burn on his nose, had showered, and had changed clothes after the explosion; the officer, who lawfully entered the garage with Bunting's consent to determine the house was unoccupied, observed fuel cans, acetone containers, and a cooler underneath a table where the fire was believed to have started. The drug task force officer also opined to the magistrate that, between the time the initial call was made to authorities and the arrival of police officers, there was "plenty of time to remove items from the house."

These facts alone, although they could be viewed in a suspicious light, do not support a commonsense evaluation that there was a fair probability that contraband existed in the home. To the contrary, this minimal evidence does not directly contradict Blake's and Bunting's explanation for the fire and does not implicate any specific criminal activity. Ultimately, these facts are inadequate for the magistrate to have concluded that there was a substantial basis to find probable cause existed for the issuance of a search warrant for Bunting's home. Therefore, after excising the tainted evidence from the oral affidavit presented to the magistrate, there are inadequate facts to support a finding of probable cause, and the search warrant was invalid.

### C. Inevitable Discovery

 The exclusionary rule is the judicial remedy for addressing illegal searches and bars the admission or use of evidence gathered pursuant to the illegal search. *See Stuart v. State,* 136 Idaho 490, 496, 36 P.3d 1278, 1284 (2001). An exception to the exclusionary rule is the inevitable discovery doctrine. *Id.* The inevitable discovery doctrine applies when a preponderance of the evidence demonstrates that the information would have inevitably been discovered by lawful methods. *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387–88 (1984); *State v. Gibson,* 141 Idaho 277, 286 n. 4, 108 P.3d 424, 433 n. 4 (Ct.App.2005).

#### 1. Application of *Buterbaugh*

In denying Bunting's motion to suppress, the district court based its ruling primarily on this Court's application of the inevitable discovery doctrine in *Buterbaugh.* The district court found that information known to the officers from the initial lawful entry into the garage and from their interviews of Bunting and Blake provided probable cause for a warrant. The district court then reasoned that, if the subsequent entries were unlawful, evidence gathered during those entries would have been inevitably discovered through the execution of the valid search warrant and were admissible under the inevitable discovery doctrine.

Evidence that is discovered via an unlawful search of a premise may be admitted at trial, and avoid suppression, if it would have been inevitably discovered during the execution of an existing, valid search warrant. *Buterbaugh*, 138 Idaho at 102, 57 P.3d at 813. This requires that the evidence found through unlawful action would have been discoverable within the scope of the valid search warrant. *Id.* The valid search warrant does not have to arise out of an investigation independent from the one that resulted in the unlawful discovery of evidence for the inevitable discovery exception to apply. *Id.*

In *Buterbaugh*, some evidence was lawfully discovered pursuant to a warrantless entry by a police officer. That entry was justified by firefighters requesting assistance with possible evidence of criminal activity they discovered in the basement. The officer went on to search an upstairs bedroom outside the scope of the firefighters' initial investigation. The officer found further evidence of criminal activity in the bedroom. The officer then applied for, and received, a search warrant after presenting to the magistrate evidence found in both the basement and the bedroom. This Court determined that the officer's search of the bedroom was unlawful. *Buterbaugh*, 138 Idaho at 101, 57 P.3d at 812. However, this Court concluded that, after excising the unlawfully gained evidence from the warrant application, the portion of the application that referred to the evidence lawfully discovered in the basement provided sufficient probable cause and the warrant was still valid. *Id.* Therefore, the evidence found in the upstairs bedroom was not suppressible because it would have inevitably been revealed pursuant to the execution of the *existing valid* search warrant. *Id.* at 102, 57 P.3d at 813.

The circumstances in the instant case are distinguishable from those in *Buterbaugh.* Here, similar to *Buterbaugh,* any evidence discovered during the initial entry into Bunting's house and garage by the police was lawfully obtained, but all evidence discovered during subsequent entries was unlawfully obtained. Unlike *Buterbaugh,* however, the evidence presented to the magistrate that was gained through the initial, lawful entry was *not* sufficient to obtain a valid search warrant. Our application of the inevitable discovery doctrine in *Buterbaugh* was predicated upon the fact that the search warrant there was valid. Here, the search warrant is invalid. As a result, the evidence discovered during the unlawful entries would not have been inevitably discovered in a lawful manner because the search warrant that would "inevitably" lead to the evidence was invalid. Therefore, the inevitable discovery exception does not apply to the evidence discovered by the police during their unlawful entries into Bunting's house and garage, and the district court erred in not granting the motion to suppress.

## 2. Scope of inevitable discovery

Finally, the state asserted at oral argument that the language of *Buterbaugh* suggests that, when there is lawfully-obtained evidence that would have allowed police officers to successfully request a search warrant, then the *issuance of the warrant is inevitable* as is any information that might be discovered pursuant to its execution. In short, the state contends that here the district court could review all evidence of probable cause discovered in the initial lawful entry and interviews, even that which was *not* presented to the magistrate, to determine if a valid search warrant might have been issued. The state concludes that, because the first entry provided sufficient probable cause to obtain a search warrant, the issuance of a valid warrant and the discovery of all the criminal evidence in Bunting's house and garage was inevitable.

The underlying rationale of the inevitable discovery doctrine is that a preponderance of the evidence proves that some action that actually took place, or was in the process of taking place, would have led to the discovery of the evidence that was already obtained through unlawful police action. *See Nix,* 467 U.S. 431, 448–49, 104 S.Ct. 2501, 2511–12, 81 L.Ed.2d 377, 390–91 (where an already underway search operation would have inevitably discovered a murder victim's body). The inevitable discovery doctrine was not intended to allow a court to consider what actions

the authorities should or could have taken and in doing so then determine that lawful discovery of already unlawfully obtained evidence would have been inevitable. *See United States v. Reilly,* 224 F.3d 986, 995 (9th Cir.2000); *State v. Holman,* 109 Idaho 382, 392, 707 P.2d 493, 503 (1985).

In *Reilly,* a federal district court ruled the inevitable discovery doctrine applied to evidence found pursuant to a warrantless search when government agents could have obtained a warrant but chose not to. *Reilly,* 224 F.3d at 994. The Ninth Circuit reversed the district court's application of the doctrine and held that the fruits of an unlawful search would not be exempted from suppression through the inevitably discovery doctrine just because it was possible for the agents to obtain a warrant beforehand, but they did not bother to do so. *Reilly,* 224 F.3d at 994–95; *see also United States v. Echegoyen,* 799 F.2d 1271, 1280 n. 7 (9th Cir.1986).

In *Holman,* the state argued an officer's unlawful seizure of a vehicle did not taint the evidence of the vehicle's identification. The state reasoned that the inevitable discovery doctrine applied because the police could have seized the truck lawfully and, had they done so, the identification of the truck would have been inevitable. The Idaho Supreme Court dismissed this argument, stating the inevitable discovery doctrine was never intended to swallow the exclusionary rule wholly by substituting what the police should have done for what they really did. *Holman,* 109 Idaho at 392, 707 P.2d at 503.

The *Reilly* and *Holman* opinions exemplify the fundamental difference between discoveries that are a possibility versus discoveries that are an inevitability. Similarly, the inevitable discovery exception was applied in *Buterbaugh* by concentrating on what was inevitable, not possible. *Buterbaugh,* 138 Idaho at 102, 57 P.3d at 813. There, the discovery of criminal evidence in the upstairs bedroom was inevitable because the police actually acquired a search warrant for the house that was valid. *Id.* at 102–03, 57 P.3d at 813–14. Our conclusion in *Buterbaugh* relied on an analysis of what the police actually did, and what its inevitable result would have been,

not what the police could have done and what its possible result might have been. *See id.*

In the instant case, the state essentially argues that, in applying *Buterbaugh,* the district court was free to speculate as to what the police could have done, as well as what the magistrate's decision might have been, and then conclude that this speculated result was "inevitable." This is not at all what the language in *Buterbaugh* suggests. Given the facts in this case, it is possible that, had the police made the effort to put all the evidence gleaned from the lawful entry into Bunting's garage before the magistrate, there could have been sufficient probable cause to issue a valid warrant. However, that was not what happened and the police did not obtain a valid warrant. Therefore, we decline to extend the inevitable discovery exception to the exclusionary rule to include the situation where the police may have had sufficient evidence to obtain a warrant but failed to present it and obtain a valid search warrant.

## III.

## CONCLUSION

The initial entry into Bunting's garage and house by the police was lawful. Neither any traditional law enforcement exigency nor the following-in-the-footsteps of emergency personal exception existed, and the subsequent police entries into Bunting's garage and house were unlawful. The lawfully obtained evidence presented to the magistrate was insufficient to show probable cause to issue a search warrant. As a result, the warrant issued in this case was invalid. Because the warrant was invalid, the inevitable discovery exception did not apply to the evidence obtained during the unlawful entries, as the lawful discovery of the evidence was not inevitable. Furthermore, the possibility that, had the police acted differently, the warrant might have been valid does not make the unlawfully obtained evidence fall under the inevitable discovery exception. Because of these conclusions, the other issues raised by Bunting and the state need not be considered. The district court erred in denying

Bunting's motion to suppress. Accordingly, Bunting's judgment of conviction is vacated.

Judge LANSING and Judge GUTIERREZ concur.