**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43569**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Unpublished Opinion No. 394** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: March 9, 2017** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **JOSHUA C. POPPE,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Molly J. Huskey, District Judge.

Order withholding judgment, <u>reversed</u>.

Robyn A. Fyffe, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

GUTIERREZ, Judge

Joshua C. Poppe appeals from the district court's order withholding judgment entered upon Poppe's conditional guilty plea to possession of cocaine. Poppe argues the district court erred in denying Poppe's motion to suppress all evidence obtained as a result of his unlawful seizure and the unlawful search of his person. Specifically, Poppe maintains the district court erred in determining a reasonable suspicion of criminal activity justified extension of the traffic stop and in determining the search of Poppe was lawful. For the reasons explained below, we reverse the district court's denial of Poppe's motion to suppress and the order withholding judgment.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

We incorporate the district court's findings of fact from its order denying Poppe's motion to suppress:

1

Idaho State Police Trooper [] was on patrol at 3:00 p.m. on January 21, 2015, when he noticed the defendant make a quick lane change without signaling for the required five (5) seconds. [The trooper] then ran the license plate of the [Jeep] the defendant was driving, found that the registration had expired and stopped the [Jeep]. The Defendant was the driver and a female was sitting in the front passenger seat. [The trooper] noticed that both the Defendant and the passenger seemed unusually nervous and he asked whether there were any weapons in the [Jeep]. The passenger indicated there was a handgun under the seat and [the trooper] asked her not to reach for it. [The trooper] specifically observed that the Defendant's hand was "shaking tremendously," he wasn't providing any eye contact, and that the passenger was also pretty fidgety. The behavior of the two, in combination with the information about the gun, made him concerned. He then confirmed through dispatch that the passenger had a weapons permit.

Because of the behavior he saw, [the trooper] called for a drug dog within the first minute of the stop. He testified that he had the driver get out of the [Jeep] for safety reasons (both theirs and his) and because he did not think it would be a "good situation" to leave them both in the [Jeep] while he tried to question them. When the defendant got out of the [Jeep], the officer noticed a pocket knife clipped to his pants pocket and so did a weapons patdown. No other weapons were located.

[The trooper] spent the first five (5) minutes of the stop asking general questions regarding the identity of the two individuals, ownership of the [Jeep], and questions related to officer safety. Upon receiving the information about the handgun, [the trooper] also inquired about the gun and whether either of the passengers had any prior convictions (presumably to confirm or dispel any concerns about unlawful possession of a firearm.) He then inquired of dispatch regarding the gun. At that point, and within approximately 5 minutes after the initial stop, [the drug dog handler], and his dog, arrived. The two officers conferred briefly and then [the trooper] went back to his patrol car to contact dispatch for information regarding the Defendant and the passenger.

While [the trooper] spoke with dispatch, [the drug dog handler] spoke with the passenger, who was the owner of the [Jeep]. At that time the passenger was still seated in the [Jeep]. She told [the drug dog handler] that she had a weapons permit and had a loaded gun in the [Jeep]. She also informed [the drug dog handler] that she did not want the [Jeep] searched. [The drug dog handler] then had her step out of the [Jeep]. Six minutes after his arrival on the scene, [the drug dog handler] ran the drug [dog] around the [Jeep]. The dog quickly alerted to the rear driver's side door and the rear driver's side taillight.

It is not entirely clear when [the trooper] gets the responsive information from dispatch because one can hear on the video his conversation with dispatch but before hearing any response from dispatch, [the trooper] gets out of his car and walks back over to [the drug dog handler], who is preparing to run the drug dog around the [Jeep]. However, [the trooper's] testimony was that the search occurred while he was awaiting information from dispatch. There is nothing in the video that would dispute that testimony.

Once [the trooper] was aware the dog had alerted on the [Jeep], he placed the Defendant in handcuffs. He told the Defendant he was not being arrested, just "detained." He then searched him prior to placing him in the patrol vehicle. [The trooper] testified that he did this because he did not want to put someone with a weapon or contraband in his vehicle. During this search, a vial of cocaine was discovered in the [D]efendant's left breast sweatshirt pocket. The Defendant was then placed in the patrol car and given his *Miranda*[1] warnings. To this point, a total of fifteen minutes had elapsed since the initial stop.

Upon questioning, the Defendant initially chose not to speak about the cocaine but did tell [the trooper] that there was marijuana in the center console of the vehicle. Upon searching the [Jeep], [the trooper] found the marijuana in the center console. Later, the Defendant stated that he knew the drug found in his pocket was cocaine and that he got it for free from another individual who wanted to get rid of it.

The State charged Poppe with felony possession of cocaine, Idaho Code § 37-2732(c)(1). Poppe filed a motion to suppress all evidence against him obtained as a result of an unlawful extension of the traffic stop and an unlawful search of his person. After a hearing on the matter, the district court denied the motion, reasoning that the officers had reasonable suspicion to extend the traffic stop. The district court additionally determined that the cocaine evidence seized as a result of the search of Poppe was admissible pursuant to the inevitable discovery doctrine. Poppe reserved his right to appeal the district court's denial of Poppe's motion to suppress and entered a conditional guilty plea to felony possession of cocaine.[2] Poppe timely appeals.

## II.

## ANALYSIS

Poppe argues the district court erred in denying Poppe's motion to suppress. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*,

---

[1]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]     Poppe also entered conditional guilty pleas to misdemeanor possession of marijuana and misdemeanor possession of paraphernalia in a separate case. He does not appeal from that misdemeanor case.

3

127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## A.  Extension of the Traffic Stop

Poppe first argues the district court erred in finding the State established a reasonable suspicion of criminal activity, which justified extending the traffic stop beyond its initial purpose.  Poppe maintains that his nervousness and the presence of the loaded firearm in the Jeep did not provide a reasonable suspicion that justified the traffic stop extension.  In response, the State contends the traffic stop was not extended to begin with and, even if it were extended, reasonable suspicion justified the extension.

The United States and Idaho Constitutions prohibit unreasonable searches and seizures of persons or property.[3]  A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws.  *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998).

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.  *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000).  An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is able to be engaged in criminal activity.  *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).  Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop.  *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002).  There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop.

---

[3]  Poppe does not argue the Idaho Constitution affords greater protection, so this Court follows the analysis pursuant to the Fourth Amendment to the United States Constitution.

4

*United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *State v. Ramirez*, 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008).

A canine sniff may be performed during a traffic stop without violating the Fourth Amendment if the duration of the stop is not extended or if any extension of the stop is justified by reasonable suspicion. *State v. Kelley*, 159 Idaho 417, 424, 361 P.3d 1280, 1287 (Ct. App. 2015). When gauging whether information known to an officer justified reasonable suspicion, we consider the totality of the circumstances rather than viewing individual facts in isolation. *Cortez*, 449 U.S. at 417; *Roe*, 140 Idaho at 180, 90 P.3d at 930. Even where any individual factor "is not by itself proof of any illegal conduct and is quite consistent with innocent" conduct, a court may nonetheless conclude that the factors amount to reasonable suspicion when taken together. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989). In other words, the whole may be greater than the sum of its parts because the officer may consider the import of one fact in light of another fact. The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Even assuming the officers extended the traffic stop beyond its initial purpose, reasonable suspicion justified any extension of the traffic stop. We agree with Poppe that nervousness alone is insufficient to establish reasonable suspicion. *United States v. Fernandez*, 18 F.3d 874, 880 (10th Cir. 1994); *State v. Neal*, 159 Idaho 919, 924, 367 P.3d 1231, 1236 (Ct. App. 2016). This is because it is common for most people to exhibit signs of nervousness when confronted by a law enforcement officer whether or not the person is currently engaged in criminal activity. *United States v. Salzano*, 158 F.3d 1107, 1113 (10th Cir. 1998). Thus, absent unusual signs of nervousness, an officer's reliance on nervous behavior as a basis for reasonable suspicion is discounted. *Id.* "Only extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion." *United States v. Santos*, 403 F.3d 1120, 1127 (10th Cir. 2005).

5

Here, the trooper observed unusually nervous behavior from both Poppe and the passenger. Specifically, Poppe's hands "were trembling and shaking really bad," Poppe was avoiding eye contact, and the passenger was fidgety. Moreover, the passenger indicated a firearm was under her seat. The totality of the circumstances establishes a reasonable suspicion of criminal activity--possible weapon and/or drug violations. Moreover, the mission of a traffic stop is not only to address the traffic violation that warranted the stop, but also "to attend to related safety concerns." *Rodriguez v. United States*, ___ U.S. ___, ___, 135 S. Ct. 1609, 1614 (2015). Based on the testimony from the trooper, the district court properly determined that Poppe's and the passenger's "unusually nervous" behavior, combined with the presence of a firearm in the Jeep, provided reasonable suspicion to extend the traffic stop to include a canine sniff and drug investigation.

**B.      Search of Poppe**

Additionally, Poppe argues the district court erred in determining the cocaine evidence obtained from the search of Poppe's person was admissible. The district court noted there was no probable cause to search Poppe, but the discovery of the marijuana in the Jeep would have led to the inevitable discovery of the cocaine incident to arrest.

Although a drug's odor detected by a canine alerting on a vehicle provides probable cause to believe that the drug is present and authorizes the search of the vehicle, the mere existence of the drug in the automobile does not itself authorize the police either to search any other place or provide probable cause to arrest any person in the vicinity. *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004). Occupants of a vehicle continue to have a heightened expectation of privacy, which protects against personal searches without a warrant. *See Wyoming v. Houghton*, 526 U.S. 295, 303 (1999). "A search or seizure of a person must be supported by probable cause with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

It is uncontested that probable cause existed to search the Jeep once the canine alerted on the Jeep, and we agree with the district court's determination that there was no probable cause to search Poppe when the cocaine was discovered. We disagree, however, with the district court's conclusion that the exclusionary rule does not bar admission of the cocaine evidence because the evidence would have inevitably been discovered as a search incident to arrest.

6

The exclusionary rule is the judicial remedy for addressing illegal searches and bars the admission or use of evidence gathered pursuant to the illegal search. *State v. Bunting*, 142 Idaho 908, 915, 136 P.3d 379, 386 (Ct. App. 2006). The inevitable discovery doctrine is an exception to the exclusionary rule that was established by the United States Supreme Court in *Nix v. Williams*, 467 U.S. 431, 444 (1984) and adopted by the Idaho Supreme Court in *Stuart v. State*, 136 Idaho 490, 497-99, 36 P.3d 1278, 1285-87 (2001). The doctrine applies when the State establishes by a preponderance of the evidence that the evidence discovered pursuant to an unlawful search or seizure would have inevitably been discovered by lawful methods. *Nix*, 467 U.S. at 444; *Bunting*, 142 Idaho at 915, 136 P.3d at 386. "[T]he core inquiry is whether the police would have discovered the evidence if the misconduct had not occurred." *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989) (quoting *United States v. Namer*, 835 F.2d 1084, 1087 (5th Cir. 1988)). The State "can meet its burden by establishing that, by following routine procedures, the police would inevitably have uncovered the evidence." *Id.* at 1399. The inevitable discovery doctrine "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." *Nix*, 467 U.S. at 444 n.5.

This doctrine balances society's interests in deterring illegal police conduct and in having juries receive all probative evidence of a crime by only applying the exclusionary rule to put the government in the same, not a worse, position that it would have occupied absent the police misconduct. *Nix*, 467 U.S. at 443; *State v. Russo*, 157 Idaho 299, 306, 336 P.3d 232, 239 (2014). When the discovery of the evidence would have been inevitable as a result of other lawful means, the exclusionary rule fails to serve this purpose and, therefore, does not apply. *Nix*, 467 U.S. at 443-44.

Although those lawful means need not be the result of a wholly independent investigation, *State v. Buterbaugh*, 138 Idaho 96, 102, 57 P.3d 807, 813 (Ct. App. 2002), they must be the result of some action that actually took place (or was in the process of taking place) that would inevitably have led to the discovery of the unlawfully obtained evidence, *Bunting*, 142 Idaho at 915-16, 136 P.3d at 386-87. Indeed, the inevitable discovery doctrine was never intended to swallow the exclusionary rule by substituting what the police should have done for what they really did or were doing. *State v. Holman*, 109 Idaho 382, 392, 707 P.2d 493, 503 (Ct. App. 1985); *State v. Cook*, 106 Idaho 209, 226, 677 P.2d 522, 539 (Ct. App. 1984).

7

Here, there is no certainty that Poppe would have been arrested and then searched incident to that arrest because the officers let the passenger go after issuing her a citation for the marijuana and paraphernalia. Poppe could have been issued a citation rather than been arrested. The officers chose not to arrest the passenger for the very crimes that, according to the State, would have inevitably led to Poppe's arrest.

The State did not establish by a preponderance of the evidence that, as a matter of routine procedure, Poppe would have been arrested for marijuana and paraphernalia. Nor did the State meet its burden by relying on historical facts capable of ready verification or impeachment. We will not engage in speculation. Therefore, the district court erred in applying the inevitable discovery doctrine.

Furthermore, the search incident to arrest exception to the warrant requirement is inapplicable here. "Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." *Rawlings v. Kentucky*, 448 U.S. 98, 11 (1980). So long as a search and arrest are substantially contemporaneous, and there is probable cause to arrest without depending on the fruits of the search, a valid search incident to arrest may precede the actual arrest. *State v. Crabb*, 107 Idaho 298, 304, 688 P.2d 1203, 1209 (Ct. App. 1984). Probable cause to arrest is, of course, a predicate for either a search or arrest. *Id.* Here, it is undisputed that there was no probable cause to arrest Poppe at the time of the search. The canine alert only provided probable cause to search the Jeep. Thus, any search incident to arrest that occurred before the arrest was not valid. In sum, the district court erred in determining the cocaine evidence was admissible.

## III.

## CONCLUSION

The district court erred in determining the cocaine evidence was admissible pursuant to the inevitable discovery doctrine and the search incident to arrest exception. Therefore, we reverse the district court's denial of Poppe's motion to suppress all evidence obtained against him as a result of his seizure and the search of his person, as well as the district court's order withholding judgment.

Chief Judge GRATTON and Judge MELANSON **CONCUR**.

8