# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 41395-2013

STATE OF IDAHO, )
                            )    **Boise, June 2014 Term**
    **Plaintiff-Respondent,**    )
                            )    **2014 Opinion No. 66**
v.                           )
                            )    **Filed: July 31, 2014**
MICHAEL ROWE RUSSO, )
                            )    **Stephen W. Kenyon, Clerk**
    **Defendant-Appellant.**    )
                            )

Appeal from the District Court of the Third Judicial District of the State of Idaho, in and for Canyon County. The Hon. Gregory M. Culet, District Judge.

The judgment of the district court is affirmed.

Erik R. Lehtinen, Deputy State Appellate Public Defender, Boise, argued for appellant.

Kenneth K. Jorgensen, Deputy Attorney General, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Canyon County from convictions for Rape, First Degree Kidnapping, and Burglary. The Defendant challenges the admission of evidence first discovered in the warrantless search of his cell phone and of evidence regarding his rape fantasies and his possession of pornography depicting rape. We hold that the information obtained during the warrantless search of his cell phone was admissible under the independent source doctrine and that the district court did not abuse its discretion in admitting evidence regarding the Defendant's rape fantasies and his pornography depicting rape.

## I.

## Factual Background.

In the predawn hours of August 27, 2009, a woman sleeping in the bedroom of her apartment in Nampa, Canyon County, Idaho, awakened to see an unknown male standing over her with a knife in his hand. He was wearing a mask that covered his face and exposed his eyes.

He put a hand over her mouth and held a knife against her throat, and he then stated that she was going to cooperate. He initially attempted several sexual acts, but was unable to obtain an erection. He then had her lie on her back at the bottom of the bed, where he raped her. He wore a condom and used his cell phone to take photos of her during the rape. Before leaving, he took her sheets and a pillow case. He also had her remove the battery from her cell phone, and he placed it under clothing in her panty drawer. She ran to a neighbor's house, where she called 911. Defendant was immediately the focus of law enforcement.

The Nampa police had been investigating Michael Russo (Defendant) for an assault and battery that had occurred in Nampa on August 21, 2008. The victim, a young woman, and a female friend were alone on the second floor of the friend's home when a male appeared in the doorway of the room they were in. He was wearing a dark hooded sweatshirt, black hat, and blue jeans, and he stated that there was a fire in the basement. The victim noticed that he was wearing blue latex gloves. She ran downstairs and looked into the basement, but did not see any indication of a fire, and the man followed her down the stairs. She told him that there was no fire, and he responded that two children had run down into the basement. She walked down into the basement to check, and the man followed her. Once they were in the basement, the man lunged at her and attempted to strangle her. In the ensuing struggle, he pushed her down onto a sofa, put his hand across her mouth, and told her he had a knife. She began screaming and kicked him in the stomach, and he fled. The victim and her friend ran after him, and the friend noticed that there was a black motorcycle in the area. They then called the police.

An officer stopped a man who matched the description of the assailant about two blocks from the crime scene, and the man identified himself as Michael Russo, but claimed to have no identification. He had fresh blood on the right side of his face and neck, which he asserted to be the result of a shaving accident. He said that he was there because his motorcycle had broken. The officer asked Defendant to empty his pockets, and when he complied he produced identification. Two men then drove up and stated that they had seen someone running, but Russo was not that person. Defendant was acting nervously and volunteered that he had been involved in a robbery where a rape occurred in 1995. In actuality, Defendant had been convicted of rape in Washington in 1995 and was a registered sex offender.

The following day, Corporal Angela Weekes of the Nampa Police Department interviewed Defendant. During the interview, he denied involvement in the assault and battery,

but he consented to a search of his computer. The computer contained several videos of women being violently raped, and some of the search criteria in the computer included rape fantasies. Defendant stated that prior to raping the woman in Washington, he had watched pornography that contained women being raped. He also said that he fantasized about raping a girl who would get turned on during the rape and decide she liked it; that he fantasized about being dominant over someone; and that he still struggled with issues involving aggression and sexual boundaries.

After the Nampa police responded to the victim's apartment in this case and spoke with the victim, Defendant became the focus of their investigation. They contacted the Meridian police, who sent an officer to Defendant's apartment in Meridian, Ada County, Idaho. When the officer arrived there at 5:47 a.m., the lights were on in the apartment. He confirmed that Defendant was inside the apartment, and he checked Defendant's motorcycle that was parked outside and determined that the engine was still warm. The Meridian officer stayed outside Defendant's apartment for about an hour and left when he was relieved by Detective Deborah Cain of the Nampa Police Department. Another Nampa officer later arrived at about 8:30 a.m., and they both kept the apartment under surveillance.

Corporal Weekes contacted Detective Ray Ellis of the Meridian Police Department and asked him to obtain a search warrant from a judge in Ada County, and he did. In his affidavit, Detective Ellis provided the information described above; information concerning the rape of a young woman working as a barista in Fruitland, Idaho, on July 8, 2009, and Defendant's conduct at that coffee shop the day and evening before the rape; and information concerning Defendant's 1995 rape of a young woman working as a barista at a coffee shop in Washington. On August 27, 2009, at 11:10 a.m., the magistrate judge issued a search warrant authorizing the police to search Defendant's residence and motorcycle and to seize, as evidence of the crime of rape, certain described items that may be located in those places, including a cellular phone. As soon as Detective Ellis had obtained the search warrant, he informed Corporal Weekes that the warrant had been issued, and he then proceeded to Defendant's apartment with the warrant. Corporal Weekes and two other Nampa detectives then headed to Defendant's apartment.

At about 11:50 a.m., Detective Cain saw Defendant leave his apartment and walk to his mailbox. She called Corporal Weekes, and then she and the other Nampa officer detained Defendant at his mailbox. Corporal Weekes performed a patdown search of Defendant and removed his wallet and a cell phone from his pockets. She told him that he was not being

arrested but was being detained for investigation, and she handcuffed him and placed him in a patrol car. About five minutes later, Detective Brice King of the Nampa Police Department arrived, and Corporal Weekes gave him the cell phone. He looked through what was stored on the phone and saw a video of a condom-covered penis penetrating a shaved vagina. He then turned the phone off.

The officers searched Defendant's apartment pursuant to the warrant, and they found, among other items of evidence, two cell phones. Later that afternoon, Detective Ellis went back to the magistrate court to obtain an amended search warrant for the search of the two cell phones found in Defendant's apartment and the cell phone taken from his person. He presented to the court an amended affidavit, which included all of the information contained in the initial affidavit and additional information, including the statement: "Additionally, a cellular phone was recovered from Mr. Russo's person during a pat down search for officer safety. This phone was opened and looked at to determine ownership. Your affiant knows that a video was located on that phone that appears to depict the victim from this morning's rape." Based upon the amended affidavit, the magistrate judge issued a search warrant on August 27, 2009, at 3:15 p.m. authorizing the search of the three cell phones.

Defendant was indicted for the rape. Prior to his trial, he moved to suppress various items of evidence including the video found on the cell phone that was on his person. The district court denied his motion to suppress. During the subsequent jury trial, the victim's gynecologist testified that the victim was the woman in the video based upon various physical characteristics of her vaginal area.

Prior to trial, the State also gave notice that it intended to offer evidence under Idaho Rule of Evidence 404(b) of various prior bad acts of Defendant. The district court refused to permit most of the proffered evidence to be admitted, but it held, over objection, that the State could present evidence of Defendant's rape fantasies and of pornography found in his possession that depicted rape.

At the conclusion of the trial, the jury found Defendant guilty of the felony crimes of Rape, of Kidnapping in the First Degree (kidnapping for the purpose of raping the person kidnapped), and of Burglary. For the crime of Rape, the district court sentenced Defendant to fixed life in the custody of the Idaho Board of Correction without the possibility of parole. For the crime of Kidnapping in the First Degree, the court sentenced him to life in the custody of the

Idaho Board of Correction, with the first forty years of that sentence fixed. For the crime of Burglary, the court sentenced him to a fixed ten years in the custody of the Idaho Board of Correction. The latter two sentences were ordered to run concurrently with the fixed life sentence for Rape.

Defendant appealed, challenging the denial of his motion to suppress and the admission of the Rule 404(b) evidence. The appeal was first heard by the Idaho Court of Appeals, which affirmed Defendant's convictions. He then filed a petition for review with this Court, which we granted. In cases that come before this Court on a petition for review of a decision of the Court of Appeals, we directly review the decision of the lower court as if the appeal initially came directly to this Court. *State v. Suriner*, 154 Idaho 81, 83, 294 P.3d 1093, 1095 (2013). We likewise affirm Defendant's convictions.

## II.
### Did the District Court Err in Failing to Suppress
### the Video Found on Defendant's Cell Phone?

Defendant filed a motion to suppress from evidence his cell phone and its contents and statements he later made to police after he was arrested. He also challenged both search warrants on the ground that they contained deliberate or reckless omissions of fact that tended to mislead. No live testimony was presented in connection with the motion to suppress. The parties stipulated that the district court could consider Exhibits 1, 2, 5, and 6 that were attached to the State's memorandum in opposition to the motion to suppress (both search warrants and both affidavits submitted to obtain them) and a DVD of Defendant's custodial interview. They also stipulated that the court could take judicial notice of the testimony in the grand jury proceedings, although the transcript of that testimony has not been provided on appeal. Prior to ruling, the court recited its determination of the applicable facts. With respect to the seizure of the cell phone from Defendant's person, the court found that when Defendant came out of his apartment at about 11:50 a.m., neither Detective Cain nor the other officer "observed the defendant to do anything illegal. The officers did not see the defendant with any weapon. And the officers did not see the defendant act in a threatening manner." With respect to the chronology of events that then occurred, the court found: "Now, the defendant had come out of the apartment, was stopped at 11:50 in the morning, patted down, frisked, et cetera, wallet, cellular phone taken. . . .

5

He was told he was not being arrested and it was an investigatory detention. He was then handcuffed and placed in a patrol car." The court found that the cell phone was initially not opened or viewed, and it was then handed to Detective King. Finally, the court found: "Approximately five to ten minutes later, at approximately noon, his phone was opened and viewed by Detective King. Apparently, when looking at the phone, the officer observed a video or a photo from the rape sequence." Defendant contended in his motion to suppress that the phone was seized and searched in violation of the Fourth Amendment to the Constitution of the United States. The court denied the motion to suppress, and Defendant challenges on appeal the patdown search by Detective Cain and the warrantless search of his cell phone by Detective King. Those two issues will be addressed separately.

**Seizure of the cell phone.** Defendant does not challenge the authority of the officers to detain him while waiting for the search warrant to arrive. He challenges Detective Cain's decision to pat him down after he was detained.

Defendant first argues that he "was already in handcuffs by the time he was searched, so even if he had a weapon, it would have been difficult, if not impossible, to access and use effectively." (Citation to record omitted). That is not the chronology found by the district court, nor is it the chronology stated by Defendant in support of his motion to suppress. In his motion to suppress, he recited: "Officer Cain detained and searched the Defendant outside his apartment. He [sic] confiscated the Defendant's wallet and his cellular phone. The Defendant was told he was not being arrested, that it was an 'investigatory detention.' The Defendant was then handcuffed and placed in a patrol car." Defendant has not challenged on appeal the factual findings made by the district court. Therefore, we need not address this argument.

Defendant contends that Detective Cain did not have reasonable suspicion to believe that Defendant was still carrying a weapon on his person. According to Defendant,

> The only fact which could have raised any security concern for the officers at all was that [the victim's] rapist used a knife to gain her compliance; however, the officers would have had no reason to suspect that (even assuming they had the right suspect in their midst) Mr. Russo still had the knife on him, hours after the rape, as he checked his mail.

To justify a patdown search, "the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). The precise meaning of "reasonable suspicion" cannot be articulated with precision. *Ornelas v.*

6

*United States*, 517 U.S. 690, 695 (1996). Although it must be more than a mere hunch, the level of suspicion required to create a reasonable suspicion is less than is necessary for probable cause and considerably less than proof by a preponderance of the evidence. *Navarette v. California*, 572 U.S. ___, ___, 134 S.Ct. 1683, 1687 (2014). The purpose of a patdown search is to permit the officer to pursue his or her investigation without fear of violence. *Adams v. Williams*, 407 U.S. 143, 146 (1972). In determining whether reasonable suspicion existed, "the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417 (1981). The officer is not limited to considering only his or her observations of the suspect immediately prior to the patdown.

Detective Cain stopped Defendant because he was suspected of having committed a felony crime of violence, Rape, earlier that morning, during which he used a knife to subdue his victim. There is no contention that Detective Cain did not have at least reasonable suspicion to believe that Defendant had committed that crime.[1] The victim of the rape felt the knife blade against her neck, but she did not see the knife to know its size. There is no reason to believe that the knife could not have been concealed in a pocket, and many people carry knives in their pockets routinely. Under the totality of the circumstances in this case, Detective Cain was justified in patting down Defendant based upon a reasonable suspicion that he may be armed with a knife. There was no requirement that she know for sure that he still had the knife, or even that she thought it was probable that he still had it.

**Searching the cell phone.** When he was handed the cell phone, Detective King opened it, searched through its contents, and located a video that appeared to depict the victim of the rape. The district court held that the initial search warrant expressly permitted a search for a cell phone and therefore implicitly also authorized a search of any cell phone found. Although that search warrant had not yet been served when Detective King searched the phone, the court held that "it would have been viewed anyway inevitably when the search warrant was served." In that part of its analysis, the district court erred.

The initial search warrant only authorized the officers to *search* Defendant's residence and motorcycle for various items of evidence and "to *seize* the property on the Search Warrant Affidavit filed herein." (Emphasis added.) Although a "cellular phone" was one of the items

---

[1] The record does not reflect that Corporal Cain had been informed that the search warrant based upon probable cause had been issued prior to her detaining Defendant and patting him down.

that could be seized, the search warrant did not purport to authorize the search of a cell phone. "Different interests are implicated by a seizure than by a search. A seizure affects only the person's possessory interests; a search affects a person's privacy interests." *Segura v. United States*, 468 U.S. 796, 806 (1984) (citations omitted). A warrant authorizing the seizure of property does not authorize the search of that property. Absent exigent circumstances, a search warrant authorizing the search of a cell phone is required before the officers can search the data on the phone. *Riley v. California*, Nos. 13-132 and 13-212, 2014 WL 2864483, at *19 (U.S. June 25, 2014).

However, later that day, Detective Ellis did obtain an amended search warrant which authorized the search of the two cell phones seized from Defendant's residence pursuant to the first warrant and the cell phone seized from Defendant's person "so that a forensic examination and testing can be completed for the search of stored and deleted files." The amended affidavit submitted to obtain the amended search warrant included information obtained from the unlawful search of the cell phone. In that affidavit, Detective Ellis stated: "Additionally, a cellular phone was recovered from Mr. Russo's person during a pat down search for officer safety. This phone was opened and looked at to determine ownership. Your affiant knows that a video was located on that phone that appears to depict the victim from this morning's rape." In a footnote, Defendant argues, "Insofar as the State attempts to argue that the contents of the phone would have inevitably been discovered because of issuance of the actual amended search warrant in this case, that argument would be absurd because the State used the fruits of its illegal search of that phone to obtain the amended warrant."

"[F]acts improperly obtained do not 'become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it' simply because it is used derivatively." *Nardone v. United States*, 308 U.S. 338, 341 (1939). The inevitable discovery doctrine is closely related to the independent source doctrine. *Nix v. Williams*, 467 U.S. 431, 443 (1984). In *Nix*, the Supreme Court held that when "the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." *Id.* at 448. "The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Id.* at 443. The interests in deterring unlawful

8

police conduct and in providing juries with all probative evidence of a crime "are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Id*.

In this case, based upon the information obtained from the victim, the police had probable cause to believe that Defendant had a cell phone containing photos and/or a video of the rape. Therefore, they obtained the amended search warrant in order to search all three of Defendant's cell phones, not just the one seized from his person. The amended affidavit submitted to obtain the amended search warrant included information that had been obtained during the unlawful search of the cell phone. In that instance, the proper remedy is not to void the warrant. Rather, it is to disregard that information and determine whether there still remains sufficient information to provide probable cause for the issuance of the warrant. *State v. Johnson*, 110 Idaho 516, 526, 716 P.2d 1288, 1298 (1986). Disregarding the unlawfully obtained information when determining probable cause would put the police in the same, not a worse, position than they would have been in absent the misconduct.

The amended affidavit included all of the information included in the original affidavit plus additional information, which included:

> Your affiant learned from Officers observing the residence that Mr. Russo had been seen making several trips between his apartment and a storage unit located behind his apartment. Your affiant learned from a neighbor that at approximately 0600 this morning Mr. Russo was demanding that she remove her laundry from the washer and dryer in that building so that he could do some laundry. The neighbor found this to be suspicious. Your affiant knows that the clothing described by the victim in the rape that occurred this morning in Nampa was located during this search. Your affiant seeks to seize those items from the laundry room.
>
> Additionally, a cellular phone was recovered from Mr. Russo's person during a pat down search for officer safety.

The initial affidavit provided probable cause to believe that Defendant had committed the rape. The additional information provided supported the probable cause determination. The initial search warrant was issued to seize any cell phone in the residence or motorcycle as evidence of the crime of rape. As stated above, based upon the victim's statements, the police had probable cause to believe that Defendant had photos and/or a video of the rape on a cell phone. Under these circumstances, probable cause to search for a cell phone in order to seize it would also provide probable cause to search the cell phone. Disregarding the information

9

produced by the unlawful search of the cell phone, there was still sufficient information to provide probable cause for issuance of the amended search warrant to search the data in that cell phone. "Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory." *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003). We affirm the denial of Defendant's motion to suppress the contents of the cell phone.

## III.
### Did the District Court Err in Admitting Evidence that Defendant Had Sexual Fantasies Involving Rape and Possessed Pornography Depicting Rape?

Prior to trial, the State moved pursuant to Idaho Rule of Evidence 404(b) to be permitted to admit into evidence certain testimony and items described as follows:

> 1. Evidence of prior rape incidents should be admitted to show motive, intent, or plan to rape;
> 2. Evidence of the inability to maintain an erection, the use of gloves, the taking of the victim's clothes, the use of weapons, and/or other distinguishing characteristics displayed during rape incidents should be admitted to prove identity;
> 3. Evidence of sexual tendencies, thoughts, and/or rape fantasies should be admitted to prove motive, intent, or plan to rape; and
> 4. Evidence of pornographic videos and/or images depicting acts of forced rape found in the defendant's possession and/or on the defendant's computer should be admitted to prove motive, intent, or plan to rape.

Defendant filed an objection to the admission of the proffered evidence. The district court held that the State could not offer most of the evidence. It did, however, permit the State to offer two categories of evidence. It permitted Corporal Weekes to testify regarding an interview she had with Defendant prior to this rape in which he stated that he fantasized about raping a woman who, in the middle of the rape, would decide that she liked it and would become a willing participant. The court also permitted Detective King to testify about printed pornographic images depicting rape that were found during a search of Defendant's vehicles, and those photos were admitted into evidence. Some of the images had been downloaded from websites dealing with forced sex and bride abuse.

The admissibility of evidence offered pursuant to Rule 404(b) requires a two-step analysis. *State v. Pepcorn*, 152 Idaho 678, 688, 273 P.3d 1271, 1281 (2012). First, the evidence

10

"must be sufficiently established as fact and relevant as a matter of law to a material and disputed issue other than the character or criminal propensity of the defendant." *Id*. Second, the court must determine pursuant to Rule 403 that "the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Id*. at 689, 273 P.3d at 1282.

*1. Relevance under Rule 404(b).* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Whether evidence is relevant is an issue of law, which we review de novo. *State v. Page*, 135 Idaho 214, 219, 16 P.3d 890, 895 (2000). Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The rule states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," and it then lists various purposes for which evidence of other crimes, wrongs, or acts may be admissible. "The rule represents one of inclusion which admits evidence of other crimes or acts relevant to an issue in the trial, except where it tends to prove *only* criminal disposition." *United States v. Brown*, 562 F.2d 1144, 1147 (9th Cir. 1977) (emphasis added). In context, the "other crimes, wrongs, or acts" would be any conduct that may bear adversely on the trier of fact's judgment regarding the character of the person.

The district court held that the evidence was relevant to show motive, preparation, or plan. "Motive is a well-accepted method of proving the ultimate facts necessary to establish the commission of a crime, without reliance upon an impermissible inference from bad character." 29 Am. Jur. 2d *Evidence* § 439 (2008). Evidence of motive is relevant "when the existence of a motive is a circumstance tending to make it more probable that the person in question did the act." *Id*.

Defendant argues on appeal that motive was not relevant in this case because "anyone who breaks into a young woman's apartment, clearly for the sole purpose of raping her, does so

for the purpose of sating his sexual urges" and any evidence of motive "has in no way been shown to be specific to [the victim]." Defendant's arguments are wrong on both counts. As Corporal Weekes testified: "Sexual assault, contrary to the way the term sounds, is not a sexually-motivated crime. Sexual assault is a crime of violence that involves sex as a tool to commit an act that's power and control-related. It's motivated by power and control behavior. It's not motivated by sex." There is no requirement that evidence must show that the motive for committing the crime was personal to the victim. *State v. Almaraz*, 154 Idaho 584, 591-92, 301 P.3d 242, 249-50 (2013) (evidence of defendant's gang affiliation was relevant to show his motive for killing a stranger wearing a red sports jersey because it was the color used by a rival gang). The district court did not err in finding that the evidence of Defendant's fantasies and his collecting pornography that was consistent with those fantasies was relevant to his motive in this case.

2. *Unfair prejudice under Rule 403*. Even if evidence is admissible under Rule 404(b), it may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403. "The trial court's I.R.E. 403 determination will not be disturbed on appeal unless it is shown to be an abuse of discretion." *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Reed v. Reed*, 137 Idaho 53, 57, 44 P.3d 1108, 1112 (2002).

The district court in this case perceived that the determination of admissibility under Rule 403 was a matter within its discretion. It acted within the boundaries of its discretion, because it could either rule the evidence admissible or inadmissible. The applicable legal standards were weighing the danger of unfair prejudice against the relevance of the evidence. The court began its analysis by stating that unfairly prejudicial evidence was "evidence that has an undue tendency to suggest a decision on an improper basis and appeals to the jurors' sympathies, arouses their sense of horror, provokes their instinct to punish, or otherwise causes a jury to base its decision on something other than the established propositions in the case." The remaining issue is whether the district court reached its decision by an exercise of reason. Defendant

contends that "this evidence is extraordinarily prejudicial." "This rule, however, does not require the exclusion of all prejudicial evidence, but only that which is *unfairly* prejudicial such that it tends to suggest a decision on an improper basis." *State v. Moore*, 131 Idaho 814, 819, 965 P.2d 174, 179 (1998) (emphasis added). The standard is not "extraordinarily" prejudicial, but "unfairly" prejudicial. As the district court stated, "[M]ost evidence offered at trial is inherently prejudicial." The court considered the various items of evidence that the State wanted to offer, and it held that most of the evidence was inadmissible under Rule 403. Defendant did not show that the court failed to reach its decision by the exercise of reason. Therefore, we hold that the district court did not err in admitting the challenged evidence.

## IV.
## Conclusion.

We affirm the judgment of the district court.


Chief Justice BURDICK, Justices J. JONES, and HORTON **CONCUR.**