IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45284

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: September 5, 2018 |
| Plaintiff-Appellant, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| CHRISTOPHER JACOB MARTINEZ, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Order granting motion to suppress, reversed and case remanded.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for respondent. Andrea W. Reynolds argued.

---

GUTIERREZ, Judge

The State appeals from the district court's grant of Christopher Jacob Martinez's motion to suppress evidence obtained during a traffic stop. The State argues the district court erred in ruling the police officer deviated from the traffic stop's mission when he briefly spoke with a third officer who arrived on the scene. Alternatively, the State argues the district court erred in ruling the evidence was subject to the exclusionary rule, requiring suppression. For the following reasons, we reverse and remand.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Just before midnight, two officers ("Officer One" and "Officer Two") observed a vehicle fail to signal before turning right out of a parking lot. The officers followed the vehicle to a gas

1

station and activated their lights as they pulled in. Officer One had an on-body camera, which began recording as the police vehicle pulled into the gas station. This recording ("track one") depicted the following scene.

There were two occupants in the vehicle, and both exited the vehicle after stopping at the gas pump. Officer One recognized the passenger as Martinez. Officer Two asked Martinez for identification, which he refused to provide. Officer Two then informed Martinez he could either sit in the car or stand on the sidewalk by the convenience store. Martinez chose to stand near the convenience store. At some point, it was revealed that Martinez had a suspended license.

As Officer Two spoke with Martinez, Officer One began speaking with the driver. Officer One was informed by the driver that she was on parole for "possessing pills." Officer One then informed the driver of why she was stopped and asked again about her parole status. Officer Two asked if she should call for a drug dog, and Officer One responded, "Yes." The driver then became upset, asking if she was going to be arrested. Officer One responded that he pulled the driver over because she failed to signal.

Officer One then informed the driver that Officer One would check the driver's license and run a warrants check. Officer One was advised by the driver that she did not have any warrants, but her license was expired. Officer One informed the driver that driving with an expired license was an arrestable offense and asked Officer Two to search the driver for weapons before returning to the police vehicle. As Officer Two patted down the driver, the driver again became upset. Martinez began shouting from his location on the sidewalk. Officer One then instructed Officer Two to place handcuffs on the driver. As Officer Two placed the driver in handcuffs, Martinez continued to shout loudly. Officer One walked over to Martinez and informed him that he was interfering with the traffic investigation, and if he started to talk again he would be arrested.

As Officer One returned to his vehicle, he relayed the driver's information to dispatch and retrieved a citation pad. While Officer One was inside the police vehicle, a third officer arrived on the scene ("Officer Three"). Officer One exited the vehicle and began writing the traffic citation. One minute and forty seconds later, Officer One stopped writing the citation and began walking backwards. Officer Three asked Officer One if he was "writing a uniform citation." Officer One responded affirmatively. At this point, the recording ends.

According to testimony, Officer One turned off his on-body camera. However, he turned the camera back on, though it is unclear the amount of time that lapsed in between recordings.[1] Twenty-two seconds into the second recording ("track two"),[2] Officer One walked back to his vehicle and resumed writing the citation. As Officer One resumed writing the citation, Officer Two moved the driver to the rear of the police vehicle, and Officer Three approached the stopped vehicle with his drug dog to conduct a drug-dog sniff. Officer One continued writing the citation until he was notified by Officer Three that the drug dog had alerted. Officer One then placed the citation pad on the hood of his car. A search of the vehicle revealed a glass pipe with white residue, a hypodermic syringe, and small baggies with a white crystalline substance. Martinez and the driver were both arrested and charged with possession of a controlled substance and possession of drug paraphernalia. Martinez was also charged with being a persistent violator.

Martinez filed a motion to suppress the evidence obtained from the vehicle, arguing the officers unlawfully extended the traffic stop. The district court agreed and granted Martinez's suppression motion, ruling Officer One deviated from the traffic stop when he stopped writing the citation and impermissibly extended the stop as he communicated with Officer Three. The district court also ruled that the attenuation doctrine and inevitable discovery doctrine were inapplicable in the given case. The State timely appeals.

## II

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d

---

[1] Officer One testified he talked with Officer Three for a couple of minutes, whereas Officer Three testified the two only talked for a couple of seconds. The district court found that the officers spoke for at least thirty seconds.

[2] The new recording, ("track two") begins with thirty seconds without audio.

659, 662 (Ct. App. 1999). The State does not challenge the district court's factual findings. Therefore, the issues before us are purely questions of law over which we exercise free review.

## III.

## ANALYSIS

The district court granted Martinez's motion to suppress evidence obtained during a traffic stop because it concluded that, as a matter of law, Officer One's communication with Officer Three unconstitutionally deviated from the initial purpose of the stop. The district court also ruled that the exceptions to the exclusionary rule--specifically the inevitable discovery doctrine and the attenuation doctrine--were inapplicable, and therefore suppression was warranted. We need not address whether the district court erred in finding that the officer deviated from the original purpose of the stop and holding that the search was unlawful because suppression was not appropriate in any event due to the inevitable discovery of the evidence.

Generally, evidence obtained as a result of an unlawful search or as a result of an unlawful seizure may not be used against the victim of the search. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *State v. Van Dorne*, 139 Idaho 961, 963, 88 P.3d 780, 782 (Ct. App. 2004). However, exclusion of such evidence is not required when the means of recovery of the evidence are sufficiently distinguished to be purged of the primary taint of the illegal police conduct. *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004). Under the federal constitution, applying the exclusionary rule and suppressing evidence is done for two purposes: (1) to deter lawless conduct by law enforcement and (2) to close the doors of the courts to any use of evidence unconstitutionally obtained. *Wong Sun*, 371 U.S. at 486.

On appeal, the State argues that the contraband would have inevitably been discovered because the drug-dog sniff would have occurred regardless of the alleged illegal extension of the traffic stop, and the positive alert would have provided probable cause to search the vehicle. Martinez relies on *State v. Liechty*, 152 Idaho 163, 267 P.3d 1278 (Ct. App. 2011) for the proposition that the inevitable discovery doctrine is only applicable when an additional line of investigation would have revealed the evidence at issue. The district court agreed, relying on *Liechty* and *State v. Holman*, 109 Idaho 382, 707 P.2d 493 (Ct. App. 1985), to phrase the issue as "whether an additional line of investigation would have revealed the methamphetamine." Ultimately, the district court concluded that since no additional line of investigation occurred, the exception was inapplicable. This was error.

4

The inevitable discovery doctrine applies when a preponderance of the evidence demonstrates that the evidence discovered pursuant to an unlawful search or seizure would have inevitably been discovered by lawful methods. *Nix v. Williams*, 467 U.S. 431, 444 (1984); *State v. Bunting*, 142 Idaho 908, 915, 136 P.3d 379, 386 (Ct. App. 2006). This doctrine balances society's interests in deterring illegal police conduct and in having juries receive all probative evidence of a crime by only applying the exclusionary rule to put the government in the same, not a worse, position than would have been occupied absent the police misconduct. *Nix*, 467 U.S. at 443; *State v. Russo*, 157 Idaho 299, 306, 336 P.3d 232, 239 (2014); *see also State v. Bower*, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct. App. 2001). When the discovery of the evidence would have been inevitable as a result of other lawful means, the exclusionary rule fails to serve this purpose, and therefore it does not apply. *Nix*, 467 U.S. at 443-44.

As noted above, Martinez relies on *Liechty*, wherein we held that the inevitable discovery doctrine did not apply where the record failed to disclose any additional line of investigation. *Id.* at 170, 267 P.3d at 1285. More recently in *State v. Rowland*, 158 Idaho 784, 352 P.3d 506 (Ct. App. 2015), we clarified this proposition, stating that the lawful means which would have uncovered the evidence "need not be the result of a wholly independent investigation . . . they must be the result of some action that actually took place (or was in the process of taking place) that would inevitably have led to the discovery of the unlawfully obtained evidence." *Id.* at 787, 352 P.3d at 509. More to the point, the Idaho Supreme Court has stated "the inevitable discovery doctrine asks courts to engage in a hypothetical finding into the lawful actions law enforcement *would have inevitably taken* in the absence of the unlawful avenue that led to the evidence." *State v. Downing*, 163 Idaho 26, 31, 407 P.3d 1285, 1290 (2017). Thus, while the inevitable discovery exception does not permit the court to speculate on the course of action the investigation *could* have taken in the absence of the constitutional violation, "even if that alternate course likely would have yielded the evidence," it must "presuppose inevitable hypotheticals running in parallel to the illegal actions." *Id.* at 32, 407 P.3d at 1291.

Martinez is correct that the doctrine was not intended to allow a court to consider what actions the authorities should or could have taken and in doing so then determine what lawful discovery or already unlawfully obtained evidence would have been inevitable. However, the underlying rationale of the inevitable discovery doctrine is that a preponderance of the evidence proves that some action that actually took place, or was in the process of taking place, would

5

have led to the discovery of the evidence that was already obtained through unlawful police action. *See Nix*, 467 U.S. at 448-49; *Bunting*, 142 Idaho at 916, 136 P.3d at 387.

At the district court, the State argued that "a lawful sniff of the vehicle would have occurred regardless of any allegedly unlawful extension of the stop." While this Court will not speculate as to the course of action the officers could have taken, we cannot ignore what was already in progress. Officer One had informed the driver she had committed an arrestable offense. He had instructed Officer Two to search the driver for weapons and eventually to handcuff the driver. Officer Two had lawfully requested a drug dog on scene. The drug dog arrived prior to the issuance of any citation and any alleged constitutional violation. Neither Martinez nor the driver of the car had a valid driver's license in order to move the vehicle after the valid traffic stop's purpose was fulfilled. Therefore, the vehicle could not have been driven away by anyone present even after the completion of issuing a traffic citation. It is unrealistic to suggest that absent the brief conversation between the two officers, the police would have discontinued the simultaneous drug investigation and that Officer Three would have not conducted a drug-dog sniff. Rather, the controlled substance and paraphernalia would have inevitably been discovered through a permissible alternative investigation already in progress. Thus, the evidence from the car should not have been suppressed.

## IV.

## CONCLUSION

A permissible additional investigation--i.e., the drug-dog "free-air" sniff--had already been set into motion by the time Officer One began writing the citation. The car could not have been lawfully moved by either occupant. Thus, the controlled substance and paraphernalia would have inevitably been discovered regardless of the brief conversation between the two officers. The alert provided probable cause to search the vehicle for illegal substances through an alternative, lawful investigation already set in motion. Accordingly, the district court erred in ruling that the inevitable discovery doctrine was inapplicable. We therefore reverse the district court's order suppressing the evidence and remand the case for further proceedings consistent with this opinion.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.

6