# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46194

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, May 2019 Term |
| | ) | |
| v. | ) | Opinion filed: July 11, 2019 |
| | ) | |
| MONICA F. WOLFE, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Davis VanderVelde, District Judge.

The decision of the district court is <u>affirmed</u>.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. Kenneth K. Jorgensen argued.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Respondent. Jenevieve C. Swinford argued.

_____

MOELLER, Justice.

## I.     NATURE OF THE CASE

The State appeals from a Canyon County district court order granting Monica F. Wolfe's motion to suppress evidence obtained from a cell phone in her possession.[1] The district court held that law enforcement unlawfully seized the phone prior to obtaining a warrant to search it. The State argues that the independent source exception applies because law enforcement subsequently obtained a valid search warrant that was not tainted by the unlawful seizure, and therefore, the evidence found on the phone should not have been suppressed. For the reasons stated below, we affirm.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In early 2017, a dog owned by Robert Wolfe and his new wife became unusually lethargic and eventually died. Around that same time, they noticed golf balls in their yard, some of which had been chewed. Because no one in the family played golf and they did not live near a

---

[1] Wolfe claimed that she was borrowing the phone from a friend.

1

golf course, suspicion arose. As a result, the family initiated an investigation through Animal Control and discovered that the golf balls appeared to have antifreeze residue on them. A veterinarian later confirmed that the dog died due to ingesting antifreeze and golf balls. From this, the family suspected that the dog had been poisoned. Additionally, from late 2016 to early 2017, Robert and his wife had to replace several vehicle tires that were punctured with screws where the tread and the sidewall of the tire meet.

Soon after the dog died, Daniel Collins, a man who had dated Robert's ex-wife, Monica Wolfe, contacted Robert and informed him that he had been solicited by Wolfe to kill Robert and his dog. Robert met with Collins at a restaurant and, unbeknownst to Collins, recorded their conversation. During the conversation, Collins stated that Wolfe asked him to find out when Robert left work so that he could "take [him] out from there." Regarding the dog, Collins said that he was hoping he could "get to [Robert]" before it died, and that Wolfe's plan was to mix car antifreeze with meatballs to kill the dog. He further asserted that Wolfe "was asking [him] for help . . . but basically wanted to be the one to have [Robert] underground" because "she [was] angry" with him for obtaining custody of their two kids. After this conversation, Robert contacted the police to report Wolfe and Collins.

On June 7, 2017, Collins was called in for an interview with Detective Kari Seibel. During the interview, he informed the detective about his interactions with Wolfe, in which she repeatedly expressed her desire to kill Robert and asked Collins to help her devise a plan to kill him so that she could regain custody of their kids. Collins alleged that the plan was to make Robert's death look like a suicide. He told the detective that Wolfe had researched various means of killing Robert and described the different methods she suggested to achieve this end.

As a result of Collins's statements, Wolfe was later interviewed. After reading Wolfe her Miranda rights, the detective interviewed her for approximately forty minutes. During the interview, Wolfe asserted that, although she and Collins discussed killing Robert on multiple occasions, it was merely "pillow talk" and "fantasy." She also admitted to having a conversation about killing a neighbor's dog with antifreeze, but denied killing Robert's dog. Further, she and the detective discussed text messages that were on a cell phone in her possession. Because the detective believed that evidence of the alleged crimes would be on the phone, she informed Wolfe near the end of the interview that she was going to seize it. Wolfe informed her that she was borrowing the phone from a friend and that, although she had sent various text messages

2

from it, it would not have the information that the detective sought. At that point, the detective seized the phone without a warrant or Wolfe's consent. After the phone was seized, Wolfe made several statements to the detective regarding text messages she sent from the phone concerning her desire to kill Robert. However, she told the detective that "you have to take them in context," as she may have just been angry or joking.

Days later, the detective obtained a warrant, searched the phone, and discovered evidence supporting the filing of charges against Wolfe. As a result of the phone search, the detective also obtained a second warrant to access Wolfe's Google accounts. In November 2017, Wolfe was indicted on one count of conspiracy to commit murder and one count of aiding and abetting poisoning animals.

Wolfe filed a motion to dismiss and a motion to suppress. Wolfe argued that the indictment should be dismissed because inadmissible evidence had been presented to the grand jury, the State failed to disclose exculpatory evidence, and the State failed to follow procedure in reclaiming exhibits presented to the grand jury. She further argued that the evidence obtained from the phone and the Google accounts should be suppressed because the phone had been unlawfully seized and the warrant for information from Google was void because it had been executed late. The State argued that the indictment should not be dismissed because Wolfe did not provide applicable law for her argument to dismiss and the grand jury received legally sufficient evidence to support its finding of probable cause. The State also argued that the evidence should not be suppressed because the detective had probable cause to seize the phone, Wolfe consented to the seizure, and the seizure was also justified by exigent circumstances.

The district court heard the motions on April 4, 2018. During the hearing, neither the State nor Wolfe offered the search warrant for the phone or the affidavit supporting probable cause for the search warrant as an exhibit. On April 23, 2018, the district court issued its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss and Motion to Suppress. It granted the motion to dismiss the count of conspiracy to commit murder because, after excluding inadmissible hearsay that had been presented to the grand jury, there was not sufficient evidence to support a finding of probable cause for that count. However, the district court denied the motion in relation to the count of aiding and abetting poisoning animals. Regarding the motion to suppress, the district court determined that probable cause without a warrant was insufficient to justify the seizure of the phone, Wolfe did not consent to the seizure, and exigent circumstances

3

did not exist to justify the seizure. Thus, it concluded that "the warrantless seizure of the phone was illegal and any information obtained therefrom shall be suppressed." The district court denied the motion in regard to the information obtained from Wolfe's Google accounts because that warrant had not been executed late.

On May 4, 2018, the State filed a motion for reconsideration of the district court's order partially granting Wolfe's motion to suppress. In its motion for reconsideration, the State presented two new theories to support its argument that the evidence should not have been suppressed: that Wolfe abandoned the phone and that the attenuation exception to the warrant requirement applied. Wolfe's only argument in response was that the district court should decline to consider the State's motion because the State was using it only to proffer new theories that it had failed to raise previously. The district court heard the motion on May 15, 2018.

At the hearing, the judge asked the State: "[W]hy weren't those theories initially asserted," to which the State responded:

> [W]e don't necessarily have the time and . . . resources to commit to every case to make sure that we can present every single argument that's conceivable . . . using all necessarily or all necessary or proper arguments. It's simply, I think, unreasonable to expect every possible argument to be put forward every single time.

In addition, because the State cited an independent source case[2] for its argument regarding the attenuation exception, the district court specifically asked the prosecutor during the hearing: "[A]re you arguing attenuation or are you arguing independent source as well?" The prosecutor replied, "Your Honor, I did wish to fit that within the realm of attenuation. I understand that there are some—there is some overlap in the way the case could be interpreted as an independent source. But I think I'm fitting that within the umbrella of attenuation." During the hearing, the State also offered the search warrant and the detective's probable cause affidavit as an exhibit ("Exhibit 1") for the first time. The district court noted that, "although the State's submission of Exhibit 1 was untimely[,] the Court will admit it for the purpose of the pending motion to establish when a warrant was initially sought following seizure of the telephone."

On May 25, 2018, the district court issued a memorandum decision and order in which it addressed the State's arguments but found that neither of the new theories applied. As a result, it denied the State's motion for reconsideration in its entirety. On June 4, 2018, the State timely

---

[2] *State v. Russo*, 157 Idaho 299, 336 P.3d 232 (2014).

appealed from the district court's order partially granting the motion to suppress.

### III.     STANDARD OF REVIEW

This Court conducts a bifurcated review when it considers a motion to suppress. *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005). This means that when a ruling on a suppression motion is challenged on appeal, "the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004).

### IV.     ANALYSIS

The State argues that it preserved the issue of whether the independent source exception applies in this case and that, because that exception applies, the district court erred in determining that the unlawful seizure of the phone requires suppression of the evidence obtained from it.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "When a warrantless search or seizure is challenged by the defendant, the State bears the burden to show that a recognized exception to the warrant requirement is applicable." *Halen v. State*, 136 Idaho 829, 833, 41 P.3d 257, 261 (2002); *see also State v. Bottelson*, 102 Idaho 90, 92, 625 P.2d 1093, 1095 (1981) ("[O]nce the search is shown to have been made without a warrant, the search is deemed to be per se unreasonable, and the burden shifts to the state to show that the search was pursuant to one of the exceptions to the warrant requirement."). One such exception is the independent source exception. *State v. Downing*, 163 Idaho 26, 31, 407 P.3d 1285, 1290 (2017).

The State argued multiple theories before the district court to keep the evidence found on the phone from being suppressed. Initially, in its objection to Wolfe's motion to suppress, the State argued that probable cause to search the phone existed prior to the seizure, and thus a warrant to seize the phone was not necessary. It also argued that Wolfe consented to the seizure, and alternatively, that the exigent circumstances exception applied. After the district court rejected the State's arguments and partially granted the motion to suppress, the State proffered two new theories in its motion for reconsideration: that Wolfe abandoned the phone and that the attenuation exception applied. Because those theories also failed before the district court, the

State now proffers yet another new theory on appeal to prevent suppression—that the independent source exception applies.

Although "this Court is not limited by the prosecutor's argument or the absence thereof. . . . [i]ssues not raised below will not be considered by this court on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Cohagan*, 162 Idaho 717, 721, 404 P.3d 659, 663 (2017) (alteration in original) (internal citation and quotations omitted); *see also Weil v. Herring*, 207 N.C. 6, 175 S.E. 836, 838 (1934) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court."). This is not a new approach. Indeed, the Territorial Supreme Court of Idaho recognized over 150 years ago that

> [i]t is manifestly unfair for a party to go into court and slumber, as it were, on his defense, take no exception to the ruling, present no point for the attention of the court, and seek to present his defense, that was never mooted before, to the judgment of the appellate court. Such a practice would destroy the purpose of an appeal and make the [S]upreme [C]ourt one for deciding questions of law in the first instance.

*Smith v. Sterling*, 1 Idaho 128, 131 (1867). This principle was revisited in *State v. Garcia-Rodriguez*, wherein we noted that Idaho courts have "long held that '[a]ppellate court review is limited to the evidence, theories and arguments that were presented below.' " 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (quoting *Nelson v. Nelson*, 144 Idaho 710, 714, 170 P.3d 375, 379 (2007)). We further held that the principle of issue preservation "applies equally to all parties on appeal." *Id.* at 276, 396 P.3d at 705.

The State argues that the independent source exception was asserted below by its reliance on *State v. Russo*, 157 Idaho 299, 336 P.3d 232 (2014), a case in which the independent source doctrine was applied to support the warrantless search of a cell phone. Notwithstanding the remarkably similar circumstances between *Russo* and the case at bar, the prosecutor specifically declined the district court's implicit invitation to apply *Russo* on the proper theory, saying, "Your Honor, I did wish to fit [*Russo*] within the realm of attenuation. I understand that there are some—there is some overlap in the way the case could be interpreted as an independent source. But I think I'm fitting that within the umbrella of attenuation." The State avers that, despite "the prosecutor's ill-advised attempt to shoehorn *Russo* into the attenuation doctrine," he "did not waive [the] request that *Russo* be applied in this case" as an independent source exception case. The State's position significantly broadens and misrepresents the argument made by the

6

prosecutor below, which was clearly that *Russo* should be applied as an attenuation exception case. The State's limited and steadfast use of *Russo* below—exclusively in support of its attenuation argument—negates what may have otherwise been apparent from the State's reliance on *Russo*, *i.e.*, that it was being offered as an independent source case.

We acknowledge that, in its motion for reconsideration, the State cited *Russo* for the proposition that, where an application for a search warrant includes information that was unlawfully obtained, "the proper remedy is not to void the warrant. Rather, it is to disregard that information and determine whether there still remains sufficient information to provide probable cause for the issuance of the warrant." Yet, simply stating the name of a case and a general proposition therefrom is not enough to raise every specific theory or principle of law within it.[3] Allowing the State to merely cite a case without arguing the proper legal theory applicable to the issue at hand would effectively nullify the State's burden to prove application of an identified exception to the warrant requirement. Such a "kitchen sink" strategy will not suffice to preserve an issue for appeal and is inherently unfair to the defense. More apropos to the facts of this case, merely citing a case, and then expressly disavowing one of the very principles of law for which it stands, is simply not enough to preserve the argument. The defense cannot be expected to respond to legal theories that the State expressly rejected below.[4]

Further, although independent source and attenuation are similar doctrines, it cannot be said that raising one necessarily implicates the other. While these exceptions, as well as the inevitable discovery exception, all concern the causal relationship between an unconstitutional act and law enforcement's later discovery of evidence, their relationship is not so indistinguishable that it creates an "all for one, one for all" method of argument. Should this be the case, there would be no need for three distinct exceptions. The fact that each exception is analyzed under a different test supports this conclusion.

---

[3] For example, if a defendant improperly cited *Miranda v. Arizona, 384 U.S. 436 (1966)* in support of an alleged *Fourth* Amendment violation, this would not preserve the defendant's ability to later raise a *Fifth* Amendment issue for the first time on appeal.

[4] The highly unusual facts of this case necessitate that this holding is a narrow one. It is unlikely that most attorneys would reject a potentially viable legal theory when it is pointed out to them by the judge. Here, the prosecutor elected to "double down" solely on his untenable theory of attenuation—rather than arguing the independent source exception in the alternative—thereby failing to preserve the issue for appeal. Notwithstanding the presence of a potentially applicable exception to the warrant requirement upon which the suppressed evidence could have been admitted, it is not the proper role of this Court to save a party from its tactical errors below.

7

Since deciding *Garcia-Rodriguez* in 2017, we have revisited the question of issue preservation several times. In a recent case that built upon our holding in *Garcia-Rodriguez*, we clarified:

> [w]e will not hold that a trial court erred in making a decision on an issue or a party's position on an issue that it did not have the opportunity to address. To be clear, both the issue and the party's position on the issue must be raised before the trial court for it to be properly preserved for appeal. . . . *Garcia-Rodriguez* exemplifies a party entering the appellate process riding a similar-looking but entirely new horse. A groomed horse is expected on appeal, but a different horse is forbidden.

*State v. Gonzalez*, No. 44534, 2019 WL 693765, at *4 (Idaho Feb. 20, 2019). Here, the prosecutor clearly advised the trial judge that he was not relying on the independent source doctrine. Under these circumstances, the court was under no duty to analyze the case under that theory, and the defense had no reason to respond.

This case fits squarely within the framework of *Garcia-Rodriguez*, as we once again find ourselves with a similar but different "horse" presented on appeal. *Gonzalez*, 2019 WL 693765, at *4. This is evidenced by the fact that the district court made no findings or conclusions relating to the independent source exception. The State had at least two opportunities to properly raise the independent source exception below, yet expressly rejected it. Consistent with our holding in *Garcia-Rodriguez*, we decline to provide the State with a third bite of the apple on appeal.

## V.    CONCLUSION

We affirm the district court's decision granting Wolfe's motion to suppress.

Chief Justice BURDICK, Justices BRODY, BEVAN and STEGNER, CONCUR.