**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45586**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 15, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOSEPH JOHN DAVIS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Scott Wayman, District Judge.

Judgment of conviction, <u>affirmed.</u>

Eric D. Fredericksen, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Joseph John Davis appeals his conviction for first degree murder. Davis argues that the district court abused its discretion by admitting irrelevant and prejudicial evidence of his premarital, sexual relationship. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Davis was charged with first degree murder after the death of his sixteen-month-old stepson while in his care. Before trial, the State filed notice of its intent to introduce evidence of the child's biological father, Wilburn, as a rival and sexual competitor to Davis. This included evidence that the child's mother, Cheyney, had a sexual relationship with Wilburn when she was sixteen years old and she became pregnant, as well as a sexual relationship with Davis, soon thereafter, during the early stages of her pregnancy. At the pretrial hearing on the motion, the

1

State argued that this evidence was relevant to establish motive. Davis argued that it was not relevant; it was prejudicial due to the nature of the relationship; it was lacking an adequate offer of proof; and it would confuse the jury. The district court reserved ruling on the matter until trial.

Before cross-examination of Davis at trial, the State sought to question Davis on his sexual relationship with Cheyney prior to their marriage, and Davis objected. The district court overruled Davis's objection, finding that the testimony solicited by the State was relevant to motive and impeachment, and its probative value was not outweighed by unfair risk of prejudice. The State then questioned Davis, and presented three additional witnesses on rebuttal, all of whom testified that Davis had a sexual relationship with Cheyney when she was sixteen years old and pregnant with Wilburn's child. The jury found Davis guilty of first degree murder. Davis timely appeals.

## II.

## ANALYSIS

Davis argues that the district court abused its discretion when it admitted the State's evidence of his premarital, sexual relationship with Cheyney. Specifically, Davis argues that the evidence was admitted in violation of Idaho Rule of Evidence 404(b), as the evidence of Davis's premarital relationship had no other purpose outside of portraying him as a person of bad character.

The evidence rule in question, I.R.E. 404(b), provides:

> (1)     Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2)     Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case, the prosecutor must:
>> (A) file and serve reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>> (B) do so reasonably in advance of trial--or during trial if the court, for good cause shown, excuses lack of pretrial notice.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). Of course, evidence of another crime, wrong, or act may implicate a

person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other acts that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a material and disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

## A.    Sufficient Evidence

Davis first argues that the State did not present sufficient evidence to establish the prior bad act, in this case the premarital relationship, as fact. Before cross-examination of Davis, the State requested that the court rule on the admissibility of evidence pertaining to the premarital relationship, which they sought to establish through questioning Davis. The district court found that there was sufficient evidence to establish the premarital relationship took place, through testimony the State sought to elicit from Davis, among other facts and circumstances on the record, which included the State's offer of proof at the pretrial hearing that Cheyney would testify to establish the relevant facts.

Davis argues that since the State had not presented any evidence of the premarital relationship prior to questioning Davis, the district court lacked a basis to find that a reasonable jury could believe the conduct actually occurred. However, the evidence presented to the jury and the State's offer of proof was more than adequate to support the finding from the district court that the jury could reasonably believe that the relationship actually occurred. Davis is essentially arguing that evidence of a prior act must exist on the record before evidence of a prior

3

act may be admitted into the record. We disagree. The district court did not err in finding that there was evidence sufficient to support a jury's reasonable belief that the premarital relationship occurred.

**B.    Relevance**

The district court admitted the evidence of Davis's premarital, sexual relationship, finding the evidence was relevant to motive and impeachment. The State's theory behind presenting this evidence was to show that Davis harbored some ill-will toward his stepson due to his rivalry with the child's biological father, thereby establishing some motive to harm the child. The evidence was also used to impeach Davis's credibility, as he testified at trial that he did not have a sexual relationship with Cheyney while she was pregnant and had previously told investigators that he had known Cheyney for three or four years as friends, implying a platonic relationship.

Davis argues that the evidence of his premarital relationship was relevant only to his character. Turning first to the court's finding that the evidence was relevant to motive, Davis argues that since he had already married Cheyney, there was no ongoing sexual competition. There was also no additional evidence that Davis harbored any resentment toward his stepson, or history of abuse, and the State's assertion that the evidence demonstrated motive was therefore completely speculative. Rather, the evidence of the premarital relationship was used to portray Davis as a man of bad character who had a sexual relationship with a sixteen-year-old girl.

"Motive is generally defined as that which leads or tempts the mind to indulge in a particular act. It is distinguishable from intent, which is the purpose to use a particular means to effect a certain result." *State v. Stevens*, 93 Idaho 48, 53, 454 P.2d 945, 950 (1969) (internal citation omitted). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401. "Evidence of motive is relevant when the existence of a motive is a circumstance tending to make it more probable that the person in question did the act." *State v. Russo*, 157 Idaho 299, 308, 336 P.3d 232, 241 (2014) (internal quotation marks omitted).

The evidence of Davis's premarital relationship with Cheyney while she also had a recurring relationship with the father of his stepson, does have some tendency to show that a rivalry existed, and is relevant to show motive as to why Davis may have harmed his stepson.

4

Therefore, the district court did not abuse its discretion when it admitted the evidence of Davis's premarital relationship. While Davis argues that after he married Cheyney, there was no longer a competition and that there was no additional evidence of abuse or resentment, the jury, as the ultimate finder of fact, was allowed to consider the evidence as it was presented, including the potential weaknesses that Davis points out. We will not substitute our own view of the evidence with that of the jury. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991).

Davis also argues that the State's use of three additional witnesses on rebuttal led to a mini-trial where the jury repeatedly heard about Davis's premarital relationship. This testimony, Davis argues, resulted in the jury repeatedly hearing about Davis's alleged premarital relationship with Cheyney without any legitimate basis other than showing Davis's bad character. We disagree with Davis's argument that this evidence was time-consuming and confusing to the jury. As established above, the evidence was relevant. The three witnesses all testified to facts that Davis disputed, making each of their testimonies valuable in giving weight to the State's argument that Davis did in fact have a premarital relationship with Cheyney. Therefore, the district court did not err in allowing the testimony.

Turning to impeachment, Davis argues that the evidence of his premarital relationship was not relevant to impeach his credibility. Davis indicated to investigators that he and Cheyney were friends for several years before they were married. Based on this statement, the State sought to admit evidence of Davis's premarital, sexual relationship to impeach Davis's credibility. Davis argues that the statement to investigators that he and Cheyney were friends and the evidence of the alleged premarital relationship were not actually in conflict, as it is possible for friends to have sexual relationships. Regardless, the statement that one is a friend strongly implies that the relationship is platonic. Therefore, these statements do have some tendency to show that Davis may have been untruthful with investigators. This factual issue was for the jury to determine. The evidence of Davis's premarital affair was relevant to impeachment, and the district court did not err in admitting evidence for this purpose as well.

C.    **Probative Value**

Davis argues that the evidence of his premarital relationship had little, if any, probative value and a substantial risk of unfair prejudice due to the nature of the relationship. The district court found that the risk of unfair prejudice did not substantially outweigh the probative value of the evidence, because the evidence was relevant to both motive and impeachment and was not

5

the kind of unlawful act that would shock, confuse, or tend to engage the emotions of the jury and cause them to lose sight of the evidence. The district court also noted that the acts subject to the Rule 404(b) analysis were not similar to the acts which were the subject of the trial and, therefore, did not show propensity. The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *Norton*, 151 Idaho at 190, 254 P.3d at 91.

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Here, the district court noted that its decision to admit the evidence was discretionary. It acted within the bounds of its discretion by solely deciding whether or not to admit the evidence in question. The court also considered the legal standards, the probative value and risk of unfair prejudice, and properly concluded that the risk of unfair prejudice did not significantly outweigh the probative value of the evidence. The court considered the impact of the evidence on the jury, and exercised reason in reaching its conclusion. We conclude that the district court did not abuse its discretion by admitting evidence of Davis's premarital relationship with Cheyney.

## III.

## CONCLUSION

The district court did not abuse its discretion in admitting the evidence of Davis's premarital, sexual relationship with Cheyney. Accordingly, we affirm the district court's judgment of conviction.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.